SPRAGUE ADAMS, and others, *vs.* ISAAC CLAPP.

Piscataquis.    Opinion March 15, 1895.

*Real Action.    Disseizin.    Adverse Use.    R. S., c. 105, § 10.*

The object of the statute in relation to what may be considered sufficient evidence of disseizin (R. S., c. 105, § 10) was to modify the strict rules of the common law in relation to disseizin, or such exclusive and adverse possession of lands as to bar or limit the right of the true owner thereof to recover them, by dispensing with the necessity of fences or other obstructions, and rendering possession and occupancy sufficient evidence of an adverse intent of a party holding it, in the absence of other testimony controlling its true nature if the possession, occupation and improvement are open, notorious, and comporting with the ordinary management of a farm, " although that part of the same which composes the wood-land, belonging to such farm and used herewith as a wood-lot, is not so inclosed."

The final clause of this statute was intended to apply to a case where the disseizor is occupying and using a wood-lot in connection with land on a farm which he is also occupying and using adversely.

It was not intended to apply to a case where a person enters upon land of which he holds title, and all his visible acts of ownership are done upon that land, and thereby acquire title to a tract of wood-land, although it may lie contiguous to such land.

It must be a part of the farm adversely occupied in order for the statute to apply.

ON MOTION AND EXCEPTIONS.

This was a real action to recover a small piece of land situate on the western shore of Schoodic lake in Piscataquis county. The plaintiffs derived their title from the Commonwealth of Massachusetts through *mesne* conveyances. The *locus* is a part of township four, range eight, north of Waldo patent. The defendant claimed title by adverse possession.

The jury returned a verdict for the defendant, and the plaintiffs filed a general motion for a new trial and also took exceptions to a part of the charge given to the jury by the presiding justice.

The material facts will be found in the opinion. The law court did not consider the motion, and arguments of counsel on the motion are, for that reason, omitted.

*Henry Hudson and C. A. Bailey*, for plaintiffs.

*J. B. Peaks and M. W. McIntosh*, for defendant.

When Howard took this deed running to the shore of the lake, and went into possession of that portion west of the town line. it could not be construed as adverse possession of that portion east of the town line, owned by other parties. But if he occupied any portion of the part east of the town line, that occupation would be construed as occupation of all that portion east of the town line, embraced in the deed.

And the jury have found under the instruction of the court, that Howard occupied this piece of land east of the town line, and between that and the lake, for more than twenty years, as a part of his farm, or as a wood lot connected with the farm. The evidence was for the jury, and the court will not set aside a verdict in favor of adverse possession, where there was evidence on both sides to be submitted to the jury.

The court held in *Otis* v. *Moulton*, 20 Maine, 205, that it was not necessary that he should be occupying the whole farm adversely, if he owned it all except this small strip, and he occupied that adversely because he was occupying it as a part of the farm which he owned.

If a man can occupy adversely, a two-rod strip of land on the back end of his farm, which he does not own, and connected with the farm which he does own, so as to obtain a title to the two-rod strip, as was held in *Otis* v. *Moulton*, why can he not occupy adversely. a two-rod strip of wood-land, connected with a wood-lot which he does own and occupy, connected with his farms?

The case at bar is the same in all its aspects as the case of *Otis* v. *Moulton*. In each case the party with a recorded title was occupying land outside of the limits of the township, under a deed from the grantor who owned a township, and had conveyed land beyond the limits.

And in both cases the parties were occupying the land outside of the limits of the township by adverse possession. And the only possible difference in the two cases is that, in the case at bar, the defendant was occupying adversely a portion of the wood-lot connected with the farm ; and in *Otis* v. *Moulton*, it is assumed that the defendant was occupying a portion of the cultivated land.

Howard's deed of land went to the shore of the lake ; and there are cases which hold that where a man enters into possession of a parcel of land, under a recorded deed, and occupies any portion of the land described in the deed, that occupation is evidence of disseizin of all the land described in the deed. *Props. &c.* v. *Laboree*, 2 Maine, 286 ; *Foxcroft* v. *Barnes*, 29 Maine, 128 ; *Putnam School* v. *Fisher*, 34 Maine, 172.

SITTING : EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

FOSTER, J. Fifty years ago, a predecessor in title to the defendant purchased a tract of land containing about sixty acres, described as lying in the town of Brownville, in the county of Piscataquis, and bounded on the east by the shore of Schoodic Lake. Instead of the east line of Brownville being on the shore of the lake, it was in fact three or four rods west of the shore of Schoodic Lake, thereby leaving a strip of land along the westerly shore about three rods in width by eighteen in length, lying in another township. That is the subject of this controversy.

The title to this small strip was not in the grantor at the time of the conveyance, and consequently did not pass to the defendant's predecessor although embraced within the boundaries of his deed.

The plaintiffs have a record title to this strip of land which is described in their writ, and lying between the east line of the

town of Brownville and the shore of the lake. The defendant
has a record title to all of the sixty acre purchase which lies
within the town of Brownville.

The defendant claims title to the strip in controversy by
disseizin.

The jury found for the defendant, and the case comes to this
court on exceptions and a motion to set aside the verdict.

For a clearer understanding of the position which the parties
assume upon the questions involved, it may be stated in general
terms, that Daniel Howard, whom we have mentioned as the
defendant's predecessor in title, cleared and cultivated the
westerly half part of this sixty acre purchase, and built a barn
on the west side of the lot which was occupied by him while he
lived in Brownville, and that he built a log house on the same
side of the lot and lived in it for some years, and after that in a
house built on a lot just west of and adjacent to his lot; that the
cleared land, consisting of field and pasture, extended about one
half the distance from · his west line to the shore of the lake;
then there was a strip of wood-land of about sixty to one hundred
rods in width between the cleared land and the town line of
Brownville; then adjoining that came the strip in controversy
of about three rods in width which was also woods.

At the trial, the plaintiffs contended that as the defendant's
predecessors in title occupied and were in possession of the land
west of and adjacent to the piece of wood-land in dispute as
owners thereof under a good title, they could not acquire title
to a piece of wood-land by disseizin even by actual occupation of
cleared land and wood-land adjacent thereto, unless the land so
actually occupied was occupied adversely, and that § 10, c. 105,
R. S., does not apply to this piece of land in question.

That statute reads thus : "To constitute a disseizin, or such ex-
clusive and adverse possession of lands as to bar or limit the
right of the true owner thereof to recover them, such lands need
not be surrounded with fences or rendered inaccessible by water;
but it is sufficent, if the possession, occupation, and improve-
ment are open, notorious, and comporting with the ordinary
management of a farm; although that part of the same, which

composes the wood-land belonging to such farm and used therewith as a wood-lot, is not so inclosed."

The court ruled otherwise than as claimed by the plaintiffs, saying : "If I should give the ruling which the plaintiffs desire, it would take the case away from you, therefore I am going to rule the other way, and I am going to say and rule that the defendant, if the facts justify it, may come within the principle of that exception read to you from the statute, although he himself owned his field, and owned his pasture, and owned wood-land in connection with it, providing this land in dispute, being also a wood-lot, he also held and used, occupied as a wood-lot, in connection with his other property. I am not sure, at all, that I am right in my ruling, but you are to take it and accept it as right."

We feel that, by this instruction, too broad a construction was given to the terms of a statute which was enacted for the purpose of extending the doctrine of constructive disseizin by a disseizor in possession without claim of title. We think that the final clause of the section referred to was made and intended to apply to a case where the disseizor was occupying and using a wood-lot in connection with land or a farm which he was also occupying and using adversely ; and that it was not intended to apply to a case where a person enters upon land of which he holds title, and all his visible acts of ownership are done upon that land, and thereby acquire title to a tract of wood-land although it may be contiguous to such land. It could not have been the intention of this statute to extend the doctrine of constructive disseizin thus far so as to acquire title to wood-land, or such as may be used as a wood-lot, unless it be a part of the farm which is occupied and used adversely. The language of the statute is not to be extended beyond its plain and obvious meaning. The object of this statute was to modify the strict rules of the common law in relation to disseizin, or such exclusive and adverse possession of lands as to bar or limit the right of the true owner thereof to recover them, by dispensing with the necessity of fences, or other obstructions, and rendering possession and occupancy sufficient evidence of an adverse

intent of the party holding it, (in the absence of other testimony establishing its true nature) if the possession, occupation and improvement are open, notorious, and comporting with the ordinary management of a farm," although that *part of the same,* which composes the woodland *belonging to such farm* and used therewith as a wood-lot, is not so inclosed."

While the statute in question in terms obviates the necessity of fences, and provides what shall be deemed sufficient evidence of the adverse intent of the party holding it, it also extends this constructive disseizin or adverse character of the possession to that part of the land or farm which is a "part of the same" and which "composes the wood-land belonging to such farm and used therewith as a wood-lot." So that if a person is occupying a farm and in connection with it a wood-lot, used as such, although not inclosed with fences, it being an appendage to the farm, the benefit of this principle is extended to him.

But the statute does not, either in express terms or by implication, extend this doctrine of constructive disseizin to wood-land unless it is a part of the farm thus adversely occupied and used in connection with it as a wood-lot.

Where it is no part of the farm adversely occupied,— where the title to the farm is in the person occupying and in possession of it,—then, although such wood-land may lie contiguous to it, in order to acquire title to such wood-land, there must be such actual use and occupation of it, and of such unequivocal character, as will reasonably indicate to the owner visiting the premises during the statutory period, that instead of such use and occupation suggesting only occasional trespasses, they unmistakably indicate an asserted exclusive appropriation and ownership. The acts must be such as to leave no reason to inquire about intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse. This is the common-law doctrine in relation to disseizin as settled by numerous decisions. *Worcester* v. *Lord.* 56 Maine, 265, 269; *Roberts* v. *Richards,* 84 Maine, 1, 10; *Morse* v. *Williams,* 62 Maine, 446; *Tilton* v. *Hunter,* 24 Maine, 29, 32; *Prop. Ken. Purchase* v. *Laboree,* 2 Maine, 275, 286, 287, 288.

The law does not to undertake to determine what particular acts of occupation are necessary in order to acquire a title by adverse possession. *Eastern R. R.* v. *Allen*, 135 Mass. 13, 16. Every case must be decided by its own peculiar circumstances.

· This land in controversy was wild and uncultivated, and although it lay contiguous to the defendant's farm, it was not a " part of the same."

The error in the ruling consisted in applying the statute where the common-law doctrine of adverse possession should· have been given. The jury might well find that there had been a possession sufficient to vest a title in the defendant, and his predecessors in title, under the statute; while insufficient by the doctrine of the common law. See *Brackett* v. *Persons Unknown*, 53 Maine, 228, 232 ; *Prop. Ken. Pur.* v. *Laboree*, *supra*.

As this question becomes vital to the decision of the case, it is unnecessary to consider the other positions of counsel, or the motion to set aside the verdict.          *Exceptions sustained.*