PENROSE *v.* DOHERTY.

Opinion delivered March 15, 1902.

1.  TAX SALE—VALIDITY.—A sale of land for nonpayment of taxes, made on a day not authorized by law, is void. (Page 259.)

2.  CONTEMPORANEOUS CONVEYANCES—PRIORITY—REGISTRY.—Where the
    owner of land conveyed it to two grantees by different deeds
    executed on the same day, and the evidence does not show which
    deed was first delivered, or that either grantee had notice of the
    other's deed, the grantee who first placed his deed on record
    acquired the superior title, under Sand. & H. Dig., § 728, providing
    that no deed of real estate shall be valid against a subsequent
    purchaser for a valuable consideration without actual notice unless
    such deed shall be filed for record.  (Page 260.)

3.  DECREE QUIETING TITLE—REIMBURSEMENT OF TAXES AND IMPROVE-
    MENTS.—On a bill to quiet title, when it is shown that defendants
    paid taxes and made improvements on the land in good faith
    under color of title, reimbursement of such taxes and improve-
    ments will be required of plaintiff as a condition of recovery.
    (Page 261.)

Appeal from Woodruff Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Reversed.

STATEMENT BY THE COURT.

On the 21st day of November, 1899, William Penrose com-
menced an action, in the Woodruff chancery court, against Patrick
Doherty, Lizzie Doherty, and Catherine Van Cleve, to quiet his
title to a certain section of land described in his complaint, as
to the defendants, and to restrain them from cutting timber and
erecting a house thereon. He alleged in his complaint that the land
at one time belonged to Reese P. Sawyer, and that Sawyer and his
wife, on the 15th of July, 1875, conveyed the same to R. R.
Hutchinson, who, in 1898, conveyed it to J. F. Dugger, who, on
the 3d of May, 1899, conveyed it to the plaintiff; that the land was
wild and unimproved at the time of his purchase, and remained so
until the 1st of November, 1899; and that the defendants were
claiming it under pretended conveyances, which cast a cloud upon
his title, and were cutting timber and erecting a house thereon.

The defendants answered, and denied that plaintiff was the
owner of the land, but admitted that it at one time belonged to
Reese P. Sawyer; and alleged that Sawyer and wife, on the 15th
day of July, 1875, conveyed it to William A. Sigerson, who, in
January, 1876, conveyed it to Henry Kohlo, who, in January, 1877,
conveyed it to Alfred Payne, who died intestate, leaving Catherine
Payne, his widow, and Elizabeth Payne, Mary Payne, and Charles

Payne, his only heirs, him surviving. They further alleged that the land in controversy was subject to taxation for the years 1880-1-2, and that taxes were levied upon it for these years; that, the taxes not having been paid within the time prescribed by law, the land was sold on the 11th day of June, 1883, to R. R. James, he having offered to pay $35.10, the amount of the taxes, penalty, and costs charged against the same, for the whole of it, and being the highest and best bidder; that a certificate of purchase was executed to him by the collector; that he assigned it to the heirs of Alfred Payne, deceased; that they, the land not having been redeemed within two years after the sale, presented it to the clerk of the county court of Woodruff county, and demanded a deed; and that the clerk conveyed the land to them. They further alleged that the heirs of Payne conveyed the land to the widow, who afterwards, by marriage, became Catherine Van Cleve; and that she, on the 21st of October, 1899, conveyed it to the defendant, Patrick R. Doherty. And they further say that Doherty and his grantors, since the year 1877, have paid taxes on the land in controversy to the amount of $294.34, and, claiming and holding under said tax purchase, have made improvements thereon of the value of $300; and that they ask that Doherty's title to the land be quieted.

Plaintiff replied, and admitted the sale for taxes, but said it was void because it was made on a day not authorized by law; and denied that defendants have paid taxes on the land since 1882 to the amount of $235.28, and that they have made improvements thereon of the value of $300, or any sum; and averred that, if they have, it was with actual notice of his title to the land, and of the invalidity of their own.

Both parties claim title to the land in controversy under Reese P. Sawyer, who on the 15th of July, 1875, executed and delivered two deeds, by one of which he conveyed the land to R. R. Hutchinson, under whom appellant claims, and by the other conveyed it to William A. Sigerson, under whom the defendant, Doherty, claims. The deed to Hutchinson was filed and recorded in Woodruff county, where the land lies, on the 26th of August, 1875, and the deed to Sigerson was not filed for record until the 2d day of November, 1876. The evidence does not show which of the two deeds was first executed and delivered. The land was wild and unoccupied until a short time before the commencement of this action. Im-

provements were made by the defendant, Doherty, in the fall of 1899, but were incomplete when this action was instituted. The evidence also shows that Doherty and his grantors paid the taxes on the land for thirteen years.

The chancery court found that the evidence failed to show that the deed of Sawyer to Hutchinson was executed and delivered prior to the deed of Sawyer to Sigerson, and that plaintiff's claim was stale, dismissed his complaint, and sustained the title of Doherty, and quieted it as to the plaintiff; and the plaintiff appealed.

*E. L. Westbrook,* for appellant.

The burden was not on appellant to prove the execution and delivery of the Hutchinson deed before that of the Sigerson deed. Sand. & H. Dig., §§ 727-728; 25 Ark. 233; Rawle, Cov. Tit. § 259, p. 406; 22 L. R. A. 256; 30 Ark. 412; Warv. Abst. 67-73; 4 Cow. 599; 46 Barb. 398; 19 Johns. 283; 23 Barb. 92; 75 S. W. 302; Tied. Real Prop. §§ 816-818; Maupin, Marketable Titles, 175-6. The court erred in holding that appellant's claim was stale. 11 S. W. 551; 11 *id.* 138; 11 *id.* 121; 61 Tex. 166; 52 S. W. 10; 13 N. E. 250; 24 N. E. 430; 55 S. W. 168; 24 C. C. A. 399; 20 S. W. 600; 156 U. S. 556; 54 S. W. 204; 11 S. W. 479; 37 N. E. 910. The tax deeds were void. 18 S. W. 1042. Laches must be pleaded, or it is waived. 12 Ill. 432; 57 Ill. 17; 55 Ill. 288; 69 Ill. 451; 81 Ill. 571; 17 Ill. App. 499; 9 Tex. 246; 54 S. W. 204. Appellees were not entitled to anything for improvements. 45 Ark. 410; 37 Ark. 137; Sand. & H. Dig., §§ 2590-4; 46 Ark. 433.

*James Coates,* for appellees.

Appellant had notice of appellees' claim, and their delay in asserting their claim was fatal. 44 Ark. 521; 14 Ark. 294; 2 Wall. 95; 21 Wall. 178; 46 Ark. 25; 94 U. S. 806, 811; 124 U. S. 183; 19 Ark. 16; 3 Bro. Ch. 640; 43 Ark. 483; 42 Ark. 301. Between parties title is passed by an unrecorded deed. 3 Washburn, Real Prop. 323, 324.

BATTLE, J., (after stating the facts.) The sale on account of the nonpayment of taxes, having been made on a day not authorized by law, is void. *Allen* v. *Ozark Land Company,* 55 Ark. 549. The title to the land in controversy, then, depends upon the legal effect of the two deeds executed by Sawyer, respectively, to Hutchinson and Sigerson. Which of these deeds conveyed the title?

Section 728 of Sandels & Hill's Digest is as follows: "No deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof; or against any creditor of the person executing such deed, bond or instrument, obtaining a judgment or decree, which by law may be a lien upon such real estate, unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and *ex-officio* recorder of the county where such real estate may be situated." From this section it appears that the title to land does not absolutely and irrevocably vest in the grantee by virtue of the execution of a deed by the owner. As against a subsequent purchaser of the land for a valuable consideration without actual notice, the title does not absolutely vest in the first grantee, if his deed has not been filed for record. If it did, how could the deed be invalid as to the subsequent purchaser, and, if invalid as to the subsequent purchaser, how could it absolutely vest title in the grantee therein? The only rational solution of this question, it seems to us, is that the absolute title rests with the grantor and his heirs in abeyance, to vest irrevocably only upon the filing of the deed for record in the proper office. 1 Warv. Vendors, p. 542, § 16; Webb, Record of Title, § 168; 2 Sugden, Vendors, *978.

This conclusion is sustained by *Youngblood* v. *Vastine,* 46 Mo. 239. In that case the facts were as follows: "Sarah G. Wright, by herself and her trustee, on the 26th day of July, 1859, executed to E. J. Xaupi, in trust, to secure the payment of a promissory note of the same date for $3,700, given to Joseph Tuley, then living, a deed of certain real estate, her separate property, * * * which deed was not put upon record until the 19th of October, 1866. The said Joseph Tuley and Sarah G. Wright died in 1860 and 1861, and on the first of October, 1865, D. Robert Barclay, as trustee of Mrs. Ann A. Macdonald, and with her funds, purchased said property of the heirs of Sarah G. Wright, and received a warranty deed of the same, which was recorded April 28, 1866. * * * Neither Barclay nor Mrs. Macdonald had any knowledge of the trust deed to Xaupi; that the records were examined before the purchase to see if there was any incumbrances

upon the property; that a full consideration was paid for it; that the estate of Mrs. Wright had been settled by the public administrator, and that all debts presented had been paid, but this note was not among them. This suit was brought by the administrator of Tuley to foreclose his trust deed, and the contest arises in consequence of the failure on the part of Xaupi, to whom it was made, to place it upon record." Under a statute similar to ours, the court held that the heirs of Wright, on her death, became the apparent owners of the legal title, and that the duly recorded conveyance by them of the same estate to Barclay, as trustee, carried the title as against Xaupi, and said: "It would be more rational to say that the law controls the manner in which rights of property are acquired, and that it will not favor any mode of acquirement that shall encourage fraud. Thus purchasers are required to spread upon record the evidence of their ownership; and if others suffer from their neglect, the law will not recognize such ownership. Or, in using the language of the law of tenures, we might perhaps say that in a conveyance the absolute title rests with the grantor and his heirs in abeyance, to vest irrevocably only upon the record of the deed, and that it will vest in the first grantee in condition to receive the grant, who shall so place it upon record." See *Memphis Land & Timber Co.* v. *Ford,* 58 Fed. Rep. 455.

In the case at bar the deeds to Hutchinson and Sigerson were executed by Sawyer on the same day. The evidence does not show which was first delivered, or that either grantee had notice at the time he bought of the purchase by the other. Hutchinson's deed was first filed for record. At that time the land was wild and unoccupied, and had never been in the actual possession of anyone. According to our theory, the title to it became absolute, and vested irrevocably, when Hutchinson's deed was filed for record. In whom did it become absolute and irrevocable? Certainly, in Hutchinson. He thereby acquired a title superior to that of Sigerson and the right to hold the land, the registration of the deed becoming in this manner a substitute for livery of seizin.

But the chancery court found that the Hutchinson claim was stale. If so, the Sigerson claim was equally stale. The land was wild and unoccupied, and remained so until a short time before the commencement of this action, when plaintiff, holding the Hutchinson title, promptly asserted his rights. Until there was an interference with the possession, there was no occasion for resorting

to legal remedies. It is true that Doherty and his grantors for several years paid taxes on the land, but that gave them no right to or interest in the land. If they paid them under the belief the land was their property, the defendant, Doherty, has the right to subject the land to sale for reimbursement; and he is also entitled to recover the value of the improvements made by him in good faith and under the belief he was the owner of the land.

The decree of the chancery court is reversed, and the cause is remanded, with instructions to the court to enter a decree in accordance with this opinion.

HUGHES, J., dissents.