EARLE IMPROVEMENT COMPANY v. CHATFIELD.

Opinion delivered January 7, 1907.

1. JURISDICTION TO REMOVE CLOUD.—A complaint which states that plaintiff is in possession of certain lands, sets up his title, and asks to have same quieted, states a cause of action within the jurisdiction of equity. (Page 300.)

2. TAX SALE—PUBLICATION OF DELINQUENT LIST.—A tax sale is void where the county clerk fails to certify to the publication of the list of the lands and the notice of sale, as required by Kirby's Digest, § 7086. (Page 301.)

3. REMOVAL OF CLOUD—LACHES.—Failure of the owner of land to pay taxes thereon for seven years will not debar him from suing to remove a void tax sale as a cloud upon his title, although the tax purchaser has paid taxes thereon for five years since acquiring his title, and although the land since the tax sale has greatly increased in value. (Page 301.)

4. LIMITATION—RULE IN EQUITY.—In the absence of some intervening equity calling for application of the doctrine of laches, equity by analogy follows the law, and will not divest the owner of title by lapse of time shorter than the statutory period of limitation. (Page 302.)

5. SAME—ADVERSE POSSESSION OF WOOD LAND.—In order to acquire title to wood land by adverse possession, there must be actual use and occupancy of it of such unequivocal character as will reasonably indicate to the owner visiting the premises during the statutory period, not a mere occasional trespass, but exclusive appropriation and ownership. (Page 303.)

Appeal from Crittenden Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

Albert H. Chatfield was in 1897 the owner of the northeast quarter of section thirty-three, township eight north, range six east. Taxes for that year not having been paid, the land was sold for said taxes on June 13, 1898, to W. N. Brown, Jr.; and, the same not having been redeemed within two years, a deed was made to said Brown by the clerk on the 7th day of July, 1900, which deed was put on record July 11, 1900.

Brown paid the taxes of 1897 by his purchase at the tax sale, and subsequently paid the taxes of 1898, 1899, 1900, 1901, 1902 and 1903.

Chatfield filed his complaint in chancery against the Earle Improvement Co., the Southwestern Improvement Co., and R. G. Brown, trustee, on the 12th day of December, 1904, alleging that he was in the possession of said land at the date of the filing

of the complaint; that the tax sale was void (a) because the lands were never published as being delinquent for the taxes for the years aforesaid, and (b) because the proof of the advertisement of the delinquent list was not made as required by law; that the tax deed was a cloud upon his title; that the Earle Improvement Co., successor in title to W. N. Brown, Jr., was about to commit trespass on said land by cutting timber therefrom. The prayer of the complaint was that the defendants be restrained from cutting the timber, and that the deed be set aside as a cloud upon plaintiff's title.

The defendants moved to transfer to the law court, upon the ground that the complaint does not aver that the lands are wild lands; that the complaint affirmatively shows that the defendants are in possession of the lands, exercising acts of dominion and control over same, and claiming title thereto; and the defendants averred that they and their grantor, W. N. Brown, Jr., had been in the open, notorious and adverse possession of said lands since the 7th day of July, 1900. This motion to transfer was, on March 1, 1905, overruled, and the defendants saved exceptions.

Defendants then filed their answer, admitting that the title to the lands was in Chatfield at the date of the tax sale; denying that there was any informality in the tax sale, or that same was void for any reason; denying that the plaintiff was in the possession of the lands, or had ever been since the date of the deed to W. N. Brown, Jr.; and admitting that the Earle Improvement Co. was at the date of the filing of the complaint engaged in the cutting of the timber on the lands.

The answer further averred affirmatively that Brown and his grantees had paid the taxes of 1897, 1898, 1899, 1900, 1901, 1902 and 1903, before the institution of the suit, and pleaded section 5057, Kirby's Digest, as a defense.

The defendants further averred that the plaintiff had been guilty of laches in not commencing his action sooner; that the land had largely increased in value since the purchase at the tax sale; that they had been sold and transferred of record, with warranty of title; and that the situation of the parties had greatly changed.

The defendants further affirmatively pleaded that, after

Brown had obtained his tax deed from the clerk in 1900, he went into the open, notorious and visible possession of the lands, using them as a wood lot and pasture appurtenant to his farm lands, which lie adjacent to same; and that he and his grantees have ever since been in the open, notorious and visible possession of same, claiming them against all the world. The defendants therefore pleaded the two years' statute of limitations (S. & H. Digest, § 4819) in bar of the action.

The defendants further averred that the action, while in form a bill to quiet title and to remove cloud from title, was, in fact, an action to obtain possession of the land; that the plaintiff had not tendered the defendants the amount of taxes paid by them and their grantor, W. N. Brown, Jr., since the date of the tax sale, with interest, penalties and costs, nor had he filed in the office of the clerk an affidavit showing such tender before the issuance of the writ herein. Defendants therefore pleaded such failure to make such tender and to file said affidavit as a defense to the action.

Issue was thereupon joined upon the above pleadings.

Evidence was introduced tending to prove the alleged defects in defendants' tax title.

There was evidence tending to show that W. N. Brown, Jr., during the years 1900-1903 cut timber from this land, which he used for firewood, rails, posts, boards, etc., and that at various times he permitted several of his tenants, occupying other land, to cut several hundred cords of wood from this land.

There was evidence that in 1900 the land was worth $1 per acre, and in 1904 $10 per acre.

The court decreed for plaintiff on his refunding the taxes paid by defendants. The latter have appealed.

*R. G. Brown,* for appellants.

1. The case should have been transferred to law. In denying that plaintiff was in possession at the date of filing suit, both in the motion to transfer to law and in the answer, this raised an issue of fact, which the defendant was entitled to have tried by a jury. 57 Ark. 594.

2. In an action to quiet title, the defendant is entitled to have all taxes paid by him refunded; and the court in this case

erred in refusing to give judgment for the taxes of 1897 paid by defendant's grantors. 70 Ark. 256.

3. The facts in this case disclose such *laches* on the part of plaintiff as ought, in equity, to defeat him. 143 U. S. 224; 169 U. S. 237; 145 U. S: 317; 91 U. S. 587.

4. The land had been, at the time suit was brought, in the open, notorious, actual and adverse possession of appellants and their grantors for more than the statutory period.

Cutting firewood and timber on an adjoining farm is an act of possession. 48 Ark. 312. See also 89 S. W. 1002.

Neither actual occupation, cultivation or residence is necessary to constitute actual possession when the property is so situated as not to admit of any permanent or useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. 35 Miss. 490; 85 Miss. 292; 1 Cyc. 893. There is no rule of law that title by adverse possession can be gained only by certain particular methods of occupation. 135 Miss. 13. If a person enters upon land under claim of title, and uses it thereafter as a wood lot appurtenant to his farm in the usual and ordinary way, and exercises such acts of ownership over it as are necessary to enjoy it, such acts amount to actual possession. 87 Ill. 587; 18 Ill. 539; 29 Ia. 502; 122 Mich. 6; 65 Mich. 670; 111 Mo. 404; 87 Me. 316.

*T. E. Hare,* for appellee.

1. The sale was void by reason of the failure to record the delinquent list and notice of sale, with his certificate at the foot of the record showing in what newspaper the list was published, before the day of sale. 55 Ark. 218; 68 Ark. 248; 61 Ark. 36; 65 Ark. 595.

2. If the cutting of wood and getting of timber occurred on the land as testified to, it was not sufficient to give title by adverse possession under the tax deed, these acts being at best only fitful acts of ownership, which do not start the statute of limitations or constitute adverse possession. 75 Ark. 421; 68 Ark. 551; 57 Ark. 97; 49 Ark. 266; 43 Ark. 486.

3. . There was no error in refusing to transfer to the law court. A bare allegation in the motion that defendants were in actual possession, not supported by affidavits, was not sufficient to require the court to transfer to the law court. Neither did they, after answering, produce proof to justify a transfer.

4. There is no such showing of *laches* appearing in the record as will defeat the claim of the appellee. The increase in value of the land involved is not peculiar to that particular land, it has increased in value throughout the country; and the claim of various sales and transfers of the land is not supported by the proof—no deed of conveyance affecting the land is brought into the record. There is no showing of *bona fide* purchases of the land. Hence no one is injured by delay in bringing the suit. 76 Ark. 525; *ib.* 172; 75 Ark. 382. The length of time during which the party neglects to assert his rights which must pass in order to show laches, varies with the peculiar circumstances of each case. It is not subject to arbitrary rule. The length of time must be so great and the relations of the defendant to the rights such that it would be inequitable to permit the plaintiff to assert them. 152 U. S. 416.

WOOD, J. First. The court did not err in overruling the motion to transfer to law. The complaint stated that plaintiff was in possession of the land, set up his title, and asked to have same quieted. This gave the chancery court jurisdiction. *Lawrence v. Zimpleman,* 37 Ark. 645. The court must look to the allegations of the complaint, *in limine,* to ascertain whether it had jurisdiction. The complaint did not affirmatively show that the defendants were in possession, as alleged in the motion to transfer.

The chancery court did not lose its jurisdiction because defendants moved to transfer to law, alleging that they were in possession. Defendants answered, alleging a tax title, and setting up adverse possession under the two years' statute of limitation. But nothing was developed in the proof to show that the cause was not one of original equitable cognizance.

The lands, it appears from an agreement of record, were wild and unoccupied. The appellee had the legal title. He asked to have appellants' tax title cancelled as a cloud on his title.

Second. Appellants' tax title was void because of the failure of the clerk of the county court to comply with section 7086 of Kirby's Digest, as often held by this court. *Martin v. Allard,* 55 Ark. 218; *Cooper v. Freeman Lumber Co.,* 61 Ark. 36; *Taylor v. State,* 65 Ark. 595; *Logan v. East Arkansas Land Co.,* 68 Ark. 248; *Birch v. Walworth,* 79 Ark. 580.

Appellee had the right to have this title cancelled unless barred by laches or the two years' statute of limitations set up as defenses.

Appellants contend that appellee failed to pay taxes for seven years, that there were, after the sale of the lands for taxes, three transfers of record of which appellee was affected with notice, and a great increase in the value of the land, and that these facts should bar appellee by laches from maintaining this suit. In the recent case of *Jackson v. Boyd,* 75 Ark. 194, we held that, "until there is an interference with possession, there is no occasion for action, and payment of taxes by another is not sufficient of itself to call for action;" also, that "the bare lapse of time will not cure defects in an invalid tax title." We have held also that conveyances, "payment of taxes and color and claim of title are all insufficient to start the statute of limitations." See *Calloway v. Cossart,* 45 Ark. 81.

In *Rozell v. Chicago Mill & Lumber* Co., 76 Ark. 525, we said: "If the land is wild and unoccupied, and the delay has not prejudiced the rights of the defendants, they have no reason to object on that ground" to quieting the title of plaintiff.

Appellants, deriving their title from the void tax sale, had notice of the defects therein. They can not claim that they were injured or misled by any omissions of appellee to bring suit or pay taxes. See *Black v. Baskins,* 75 Ark. 382. They had notice of his title and the defects of their own. So the question is, will a failure to pay taxes for seven years bar the owner from maintaining a suit to cancel a void tax deed and other conveyances based thereon, where those acquiring the tax deed have paid the taxes continuously since their purchase for a period of five years, and where the lands since the purchase for taxes have greatly increased in value? The law in our State will divest the true owner of his title to land that has been in the actual open, continuous, exclusive and adverse possession

of another for a period of seven years, and will invest the adverse occupant with the title thereto. Section 5056, Kirby's Digest; *Crease* v. *Lawrence,* 48 Ark. 312; *Jacks* v. *Chaffin,* 34 Ark. 534; *Logan* v. *Jelks,* 34 Ark. 547; *Wilson* v. *Spring,* 38 Ark. 181.

Where the lands are wild and uninclosed, the law makes seven years' successive payments of taxes under color of title equivalent to seven years of acutal adverse possession, and vests the title to such lands in one who shows that he has paid the taxes during the period required by the statute. Section 5057, Kirby's Digest; *Towsen* v. *Denson,* 74 Ark. 302.

Under these statutes and decisions the owner of the land, as well as the adverse claimant, knows that there is no divestiture of title unless the conditions obtain as prescribed.

While it is true that the length of time during which a party may neglect to assert his rights and not be guilty of laches varies with the peculiar circumstances of each case, and is subject to no arbitrary rule like the statute of limitations (*Halstead* v. *Grinnan,* 152 U. S. 416; *Brinkley* v. *Willis,* 22 Ark. 1), yet, in the absence of some supervening equity calling for the application of the doctrine of laches, a court of chancery should and will by analogy follow the law, and not divest the owner of title by lapse of time shorter than the statutory period of limitations. *McGuire* v. *Ramsey,* 9 Ark. 518; *Ashley* v. *Rector,* 20 Ark. 359-377; *McGaughey* v. *Brown,* 46 Ark. 25; *Ringo* v. *Woodruff,* 43 Ark. 469.

The owner has two years to redeem from tax sale. No statute of limitation begins to run against him until the expiration of that period, and equity, by analogy, should not start laches against him until that time, and should not bar him from the assertion of his title until seven years after the period for redemption, unless he has done something or omitted to do something more than merely to fail to pay, and thus to permit the adverse claimant to pay the taxes. There is nothing in this record to show that appellee had acquiesced in the assertion of adverse rights by appellants. Appellee had no actual notice of appellants' claim. Had possession been taken, appellee would have been affected with notice that appellants were claiming in their own right under their recorded deeds. *Far-*

*gason* v. *Edrington,* 49 Ark. 207. But such was not the case. There was nothing to put appellee on notice that appellants were claiming the land in their own right. The payment of taxes for only five years, even with a great increase in the value of the land, we do not think would justify a court of equity in depriving the true owner of the right to have his title quieted, because the payment of taxes gave appellants no right to or interest in the land; and a court of equity, as a condition precedent to the ruling sought, should, by appropriate order, see that the adverse claimant is reimbursed for the taxes paid by ·him. *Penrose* v. *Doherty,* 70 Ark. 256. And, until there has been an equal or greater lapse of time than that shown by the legislative policy in the matter of limitations, a court of chancery should not divest the title of the owner by laches simply because, during his failure to pay taxes, there has been a great enhancement in the value of his land. We are of the opinion that the circumstances in this case do not entitle appellant to invoke the equitable ·doctrine of laches.

Third. The two years' statute of limitations set up by appellants can not avail, for the reason that the proof does not show such occupation of or dominion over the property as is required to give title by adverse possession. The Supreme Court of Maine in *Adams* v. *Clapp,* 87 Me. 316, says: "In order to acquire title to wood-land, there must be actual use and occupation of it of such unequivocal character as will reasonably indicate to the owner visiting the premises during the statutory period that, instead of such use and occupation suggesting only occasional trespass, they unmistakably indicate and assert exclusive appropriation and ownership."

This is the correct rule for courts and jurors to apply in determining from the facts of each particular case whether or not there is title by adverse possession, Measured by this rule, the chancellor's finding in favor of appellee is supported by the preponderance of the evidence.

The fact that Brown and his tenants, residents of the town of Earle, for several years cut timber from the land in controversy for firewood, rails, posts, boards, etc., to the extent of several hundred cords, and that no one except Brown and those whom he gave permission cut the timber for the various

purposes named after the tax purchase by Brown, would not of themselves constitute adverse possession. The cutting of the timber that was used for any one or all the purposes named was not all done upon one continuous and unbroken incursion upon the land, nor by many continuous successive trespasses. The timber, in other words, was not all cut at any one time, or continuously for a certain period. It was cut from time to time at intervals, as the occasion for it arose. The disconnected acts of cutting timber would indicate oft-repeated trespasses upon the land, but they were not sufficient in our opinion to show such continuous and notorious occupation and dominion over the land as would indicate to the true owner an unmistakable intention by another to own and exclusively appropriate the land.

We see nothing in the facts of this case to differentiate it in principle from *Connerly* v. *Dickinson, ante* p. 258; *Boynton* v. *Ashabranner,* 75 Ark. 421; *Driver* v. *Martin,* 68 Ark. 551.

The decree is affirmed.