## CHANCELLOR *v.* BANKS.

### Opinion delivered November 22, 1909.

CLOUD ON TITLE—LACHES.—A suit to remove a cloud upon the title of wild and unimproved land will not be barred by laches where it was brought within four years after defendants' tax title was acquired

from the State, and where plaintiff had done nothing to indicate that he had abandoned the land except that he had failed to pay the taxes during that time.

Appeal from Prairie Chancery Court; *John M. Elliott*, Chancellor; affirmed.

*Cypert & Cypert*, for appellants.

Appellee is barred by his laches in neglecting, he and those under whom he claims, to assert their rights for more than forty years, and until the enhanced value of the lands made an asser-- tion of title to appear advantageous. 96 U. S.. 611; 155 U. S. 314; 43 Fed. 12; 78 Tex. 84; 81 Ark. 352; 10 Am. & Eng. Dec. in Eq. 91; 1 Dillon (U. S.) 333; Fed. Cas. No. 9952; 5 Fed. 305; 49 Fed. 512; 53 Fed. 415; 57 Fed. 959; 79 Fed. 143; 61 Ark. 575; *Id.* 527.

*W. A. Leach*, for appellee; *Trimble, Robinson & Trimble*, of counsel.

Laches is not merely delay, but delay that works injury to another. 81 Ark. 432. It is based upon the assumption that the party to whom it is imputed has knowledge of his rights and the opportunity to assert them. 82 Ark. 368. In this case the void forfeiture stood for 35 years, during which time appellants as- serted no claim to the land, which was wild and unoccupied. There was nothing to call into activity any assertion of rights during this time by appellee or his grantors. Until there is an interference with possession, there is no occasion for action. 70 Ark. 256; 75 Ark. 197. In the absence of some supervening equity calling for the application of the doctrine of laches, a court of equity will follow the law, and not divest the true owner of title by lapse of time shorter than the statutory period of limitation. 81 Ark. 296; 46 Ark. 25; 43 Ark. 469; 20 Ark. 339.

BATTLE, J. On the 12th day of August, 1907, W. R. Banks brought suit in the Prairie Chancery Court against John C. Chancellor and H. P. Chancellor to quiet title to certain lands. He traces his title through mesne conveyances to the State of Arkansas. The defendants also trace their title in like manner to the same source, but they do so through a void tax sale. One half the land was sold in Prairie County, on the 26th day of July, 1869, at a sale for the taxes of 1868; and the other half

was sold in White County, on the 22d day of August, 1869, at a sale for the taxes of the same year. The State was the purchaser at both sales, which were void. On the 23d day of May, 1903, the State of Arkansas conveyed to H. D. Williams all her "right, title, interest and claim" in and to the land, and on the 26th day of December, 1906, Williams conveyed to the defendants. The land has been at all times wild, unimproved and unoccupied. From the time of the sale or forfeiture to the State of Arkansas in the year 1869 until after the sale by the State to Williams no' one has paid taxes on the land, and plaintiff has not from that time to the bringing of this suit paid any. Since the purchase of Williams from the State the land has greatly enhanced in value, on account of the building of a railroad within four miles thereof and the location of saw mills in its vicinity, but by no act of the defendants or their grantor. They pleaded laches in bar of plaintiff's right to relief. The court, finding, upon final hearing, that plaintiff was the owner in fee simple of the land and that the tax sales were void, set aside the conveyances under which the defendants claimed and quieted plaintiff's title to the land. Defendants appealed.

The land, being wild and unimproved, is in the constructive possession of the appellee, he having the legal title.

In *Penrose* v. *Doherty*, 70 Ark. 256, 261, the court said: "The land was wild and unoccupied, and remained so until a short time before the comemcnement of this action, when plaintiff, holding the Hutchinson title, promptly asserted his rights. Until there was an interference with the possession, there was no occasion for resorting to legal remedies."

In *Jackson* v. *Boyd*, 75 Ark. 194, 197, the court said: "In this case there is no evidence as to the increase in value, and there is no situation presented requiring action on part of the appellants. Until there is an interference with possession, there is no occasion for action, and payment of taxes by another is not sufficient of itself to call for action. *Pensose* v. *Doherty*, 70 Ark. 256. The bare lapse of time will not cure defects in an invalid tax title. *Parr* v. *Matthews*, 50 Ark. 300. Payment of taxes and color and claiming title are insufficient to start the statute of limitation. *Calloway* v. *Cossart*, 45 Ark. 81." This decision was afterwards approved in *Williams* v. *Bennett*, 75 Ark. 312, 317.

In *Earle Improvement Company* v. *Chatfield,* 81 Ark. 296, 301, it is said: "Appellants, deriving their title from the void tax sale, had notice of the defects therein. They cannot claim that they were injured or misled by any omission of appellee to bring suit or pay taxes. See *Black* v. *Baskins,* 79 Ark. 382. They had notice of his title and the defects of their own. * * *

"While it is true that the length of time during which a party may neglect to assert his rights and not be guilty of laches varies with the peculiar circumstances of each case, and is subject to no arbitrary rule, like the statute of limitations, * * * yet, in the absence of some supervening equity calling for the application of the doctrine of laches, a court of chancery should and will by analogy follow the law, and not divest the owner of title by lapse of time shorter than the statutory period of limitations. * * * The payment of taxes for only five years, even with a great increase in the value of the land, we do not think would justify a court of equity in depriving the true owner of the right to have his title quieted, because the payment of taxes gave appellants no right to or interest in the land."

In *Osceola Land Co.* v. *Henderson,* 81 Ark. 432, 439, it is said: "It is true that mere delay does not, of itself, bar the plaintiff. 'Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly within the limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the asserton of the right. This disadvantage may come from loss of evidence, change of title, intervention of equities and other causes; for where the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' "

In *Updegraff* v. *Marked Tree Lumber Co.,* 83 Ark. 154, 160, the doctrine announced in *Earle Improvement Co.* v. *Chatfield,* 81 Ark. 296, was approved.

In *Rhodes* v. *Cissel,* 82 Ark. 367, 371, the court quoted *Galliher* v. *Cadwell,* 145 U. S. 368, approvingly, as follows: "The

cases are many in which this defense (laches) has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another. Yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights and an ample opportunity to assert them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that because of the change in conditions during this period of delay it would be an injustice to the latter to permit him to now assert them."

In *Chatfield* v. *Iowa & Arkansas Land Co.*, 88 Ark. 395, 404, the court said: "Appellee is the owner of the lands. The lands are wild and unoccupied. They are in the constructive possession of the appellee. Appellant has acquired no title to them. There is no duty or necessity for resorting to legal or equitable remedies to establish its right until some one threatens to destroy or impair it; and that he has done in this case."

There are cases in which the owner of land had failed to pay taxes on the same for many successive years exceeding the statutory period of limitations of seven years, and another, claiming the land, had paid the taxes thereon for such time, and in the meantime the land had greatly enhanced in value, and in which this court held that a court of equity will not grant the owner relief on account of laches; and in which it so held obviously for the reason that it would be unjust to permit the owner to induce another, by his silence and failure to act, to pay the taxes until the lands have become valuable or greatly increased in value, and then enforce his right. *Clay* v. *Bilby*, 72 Ark. 101; *Turner* v. *Burke*, 81 Ark. 352; *Craig* v. *Hedges*, 90 Ark. 430.

The land in question being wild and unoccupied, the appellants had no reason to believe that appellee had abandoned them or to act upon his conduct. He had the right to hold them in their wild and unimproved state on account of the prospective value of the timber growing on same. Within four years after Williams purchased the interest of the State in the land, and within eight months after Williams sold to the appellants and before they had expended any money in improvements on the land, he brought this suit to quiet his title. He was reasonably active in the as-

sertion of his rights, and in preventing defendants from acquiring any equities against him.

Decree affirmed.