BUSCHOW LUMBER CO. *v.* WITT.

4-8458.

209 S. W. 2d 464

Opinion delivered March 1, 1948

Rehearing denied March 29, 1948.

*C. H. Herndon* and *Oscar E. Ellis,* for appellant.

*Jerry Witt* and *Rose, Dobyns, Meek & House,* for appellee.

GRIFFIN SMITH, Chief Justice. In 1942 and in 1943 Buschow Lumber Company procured from the State deeds purporting to convey lands that had been sold in 1931 for 1930 taxes. It is conceded that assessments not authorized by law[1] were extended and included in the tax exactions, resulting in void sales. These jurisdictional defects, however, were not called to the Court's attention in 1936 when the State's decree of confirmation was rendered.[2]

J. C. F. Motz owned 120 acres of the forfeited land. Other tracts, aggregating 153.51 acres, were owned by W. L. Hook. In April 1947 Swindle procured a quitclaim deed from Hook, and in May of the same year Witt took by quitclaim all interest that Motz may have had. Result is that these appellees stand in the position of record owners in respect of forfeitures. The lands are wild and unimproved.

---

[1] In addition to the illegal assessments, some of the property was sold under "Pt." descriptions.

[2] Act 119 of 1935; Pope's Digest, § 8918.

The Lumber Company paid taxes on assessments made after it received the State deeds. In the Witt case a tender of $23.88 was made. Swindle offered to refund, but the amount is in blank.

Appeal in the consolidated cases is from decrees avoiding confirmation and vesting title in Witt and Swindle, respectively, on condition that taxes paid by the Lumber Company be repaid with interest at six per cent.

While agreeing that the original sales were void, appellant insists that the confirmation decree gave the State color of title, and as between the State upon the one hand and those claiming under the quitclaim deeds, the former should prevail; or, if this is not correct, then the State and its subdivisions should not suffer loss of taxes for the years intervening between forfeiture and purchase.[3]

Appellees say that because appellant did not, at trial, ask that a lien be declared for the unpaid interim taxes, the question is not relevant now. They call attention to Act 269 of 1939, by the terms of which certain provisions are made for the protection of one whose title to lands . . . purchased from the State . . . has failed. In addition to "all other available remedies", such defeated purchaser may be given a lien on the land "for the amount of the taxes, penalty, and cost for which said lands were originally forfeited and sold, plus all taxes on said lands which have subsequently been paid by the purchaser", etc.

We agree with appellees that under the record and stipulations the Collector did not have power to sell, and confirmation added nothing;[4] nor is the contention that

---

[3] Tender of $23.88 on the Motz property seemingly had reference to the year of forfeiture (1930) plus 1944 and 1945. Presumptively the offer by Swindle included the same years, although this is not definitely shown. The record does not show when the Lumber Company had the properties assessed. Since one purchase was in 1942 and the other in 1943, the discrepancies are not explained. In any event taxes were not paid for thirteen years, nor were tenders made.

[4] Cases in point are *Fuller* v. *Wilkerson*, 198 Ark. 102, 128 S. W. 2d 251; *Smart* v. *Alexander*, 201 Ark. 211, 144 S. W. 2d 25; *Sherrill* v. *Faulkner*, 200 Ark. 1006, 142 S. W. 2d 229; *Noe* v. *Schuman*, 210 Ark. 999, 198 S. W. 2d 510. There are many others to the same effect,

the property had been abandoned legally tenable, although Motz, in Pennsylvania, and Hook, in California, had been absentee owners for more than fifteen years.[5] There is no presumption that wild and unimproved land upon which taxes have not been paid has been abandoned.

While the suits filed by appellees are in terms actions to quiet title, actually the decrees permit redemptions; for when the void tax sales are cancelled and the attempt to confirm is disposed of, the Lumber Company stands stripped of all interest under the Commissioner's deeds other than rights conferred by Act 269 of 1945 authorizing refunds. The deeds, although predicated upon what the Commissioner mistakenly thought was effective confirmation, were at least color of title in appellant's hands, in spite of the fact that actual possession was not taken.[6]

Section 13868 of Pope's Digest is a requirement that owners who seek through the County Clerk to redeem within two years pay the amount for which the land forfeited, with penalty, etc., ". . . and the taxes which would have accrued thereon if such land or lot had been continued on the tax books and the taxes extended. . . ." Vandergrift v. Lowery, 195 Ark. 257, 111 S. W. 2d 510. This statute is not by express terms applicable to a situation such as we are dealing with; but it does disclose a general policy that property struck off to the State but not certified shall be taxed, and on the basis of the legal assessment for which it forfeited.

The State has a continuing lien for taxes, including those due its subdivisions. Appellees have invoked the aid of equity in an effort to clear their title to lands they say did not become State property, yet they do not offer to do equity by saving to the State an amount equal to

[5] For discussions of abandonment and laches, see Carmical v. Arkansas Lumber Co., 105 Ark. 663, 152 S. W. 286; Herget v. McLeod, 102 Ark. 59, 143 S. W. 103; Parr v. Matthews, 50 Ark. 390, 8 S. W. 22; Earl Improvement Co. v. Chatfield, 81 Ark. 296, 99 S. W. 84; Chancellor v. Banks, 92 Ark. 497, 123 S. W. 650; Jones v. Temple, 126 Ark. 86, 189 S. W. 847; Union Saw Mill Co. v. Pagan, 175 Ark. 559, 299 S. W. 1012.

[6] The State's deed to 120 acres—the Motz land—was on the basis of $1.75 per acre, or $210, plus $13 cost. The Hook tracts were sold at the appraised price of $1.60 per acre, or $245.61, plus cost of $16.35.

taxes that would have accumulated if no sale had been attempted. To retain title it was incumbent upon Motz and Hook to discharge all legal levies against the lands. This obligation was not met by an attitude of inaction in 1931; nor was it equitably excused. Suit to enjoin certification to the State could have been maintained, if coupled with tender of sums actually due.

A court of equity may—and ordinarily should—require of a suitor that he *do* equity when the court's purely equitable dispensation is sought. In the instant case good conscience demands that appellees pay to the State (or to appellant as the State's apparent successor in title) the aggregate of successive yearly taxes, based upon assessments at the time of forfeiture.

The State's policy to collect taxes for years subsequent to forfeiture has for many years been expressed in legislative Acts. Even minors—special favorites of law—were not excepted. Pope's Digest, §§ 8666-7. The Act of March 27, 1893, p. 167, Pope's Digest § 8673, permitted redemption under the overdue tax Act by discharging the obligation first incurred, with penalty, interests, etc., "and all State and County taxes that would have subsequently accrued thereon had [the land] remained on the tax books subject to taxation".

A procedure in effect more than sixty years ago— Act of February 15, 1887, p. 13, Pope's Digest § 8680— allowed redemption from the Land Commissioner, who executed his deed and sent a copy to the County Clerk. Thereupon the Clerk ". . . extended on the tax books against said lands the taxes for the years that the same [had] not been paid since said erroneous sale . . . under the overdue tax law, and such taxes as [had] not been paid on such lands since sale to the State shall be charged and collected". Pope's Digest § 8682. See, also, § 8686, which required payment "of all taxes that would have accrued thereon for all purposes if the same had not been sold to the State".

The Confirmation Act of 1935, § 6, p. 321, contains a provision that "If any person . . . sets up the defense that the sale to the State was void for any cause,

such person . . . shall tender to the clerk of the court the amount of taxes, penalty and costs for which the land was forfeited to the State, *plus the amount which would have accrued as taxes thereon had the land remained on the tax books at the valuation at which it was assessed immediately prior to the forfeiture. . . .*"

Almost identical language is found in Act 296 of 1929—the old confirmation law.

We think it quite clear that there was no legislative intent that land should escape taxation as a by-product of invalid sales; hence, in the cases at bar, if appellees are to prevail they must not shift to the State a definite financial loss for which there is no statutory formula.

If appellant applies for reimbursement under Act 269 of 1945, its claim against the State should be diminished in an amount corresponding with payments appellees tender into Court in discharge of the accumulated taxes. Result is that appellees, as successors in title, will be relieved of the forfeitures, and will have paid only the taxes legally due from year to year, under assessments not complained of by the original owners. An out and out affirmance of the decrees would mean that the State, after receiving appraised values for which, *prima facie,* the lands sold, made corresponding refunds; and the only taxes actually paid would be those for 1930, 1944, and 1945.

The decrees are modified in conformity to this opinion. The causes, however, are remanded with directions that the trial Court fix a reasonable time for compliance, and for appropriate orders vesting title in appellees when they have met the equitable prerequisites.

FRANK G. SMITH, J. (Supplemental Opinion on Rehearing). In support of the petition for rehearing it is insisted that the opinion in the instant case is in conflict with the opinion in the case of *Schuman* v. *Walthour,* 204 Ark. 634, 163 S. W. 2d 517. But not so.

Here appellees, plaintiffs below, asked the equitable relief of having the confirmation decree vacated, which relief was accorded, but upon condition that appellee do

equity, that is that they pay the taxes which had accrued subsequent to the tax sale, as well as those for which the land had been sold. If this is not done the state will lose all the taxes due it from the date of the tax sale to the date of the sale to appellants by the state.

The title which the state sold to the appellant lumber company having failed, appellant will no doubt seek reimbursement from the state for the purchase price of the land, and the state will have lost its taxes on these lands for a period of about fifteen years, unless appellees are required to do equity by paying the taxes which the landowners were under legal obligations to pay, if they wish to preserve their title free from the lien of the state for the amount of these unpaid taxes. Vacating the confirmation decree would not of course discharge the lien of the state for these unpaid taxes, which lien subsists until discharged by payment of the taxes.

It is true that the owner of the original title was not required to pay Schuman, who had purchased the state's title in the case of *Schuman* v. *Walthour, supra,* but the facts were different from those in the instant case. In the Schuman case the provisions of Act 282 of the Acts of 1939 (since amended by Act 282 of the Acts of 1943) had been invoked and availed. But not so here.

This Act 282 provides that if the tax assessor deems the assessment of the taxes for the nonpayment of which the land had forfeited to the state were too high, he was authorized to prepare a certificate showing that he had made a reassessment under the Act which revised and corrected assessment which shall be forwarded to the Commissioner of State Lands.

Upon receipt of the revised assessment, the Act requires that it be entered upon a record in the Land Commissioner's office, kept for that purpose, which officer "shall thereafter issue redemption deeds or sale deeds for forfeited land in the manner and form now provided by law based upon the said reassessment values." Thereafter the delinquent land stands charged not with the original assessment, but with the revised assess-

ment. The taxes then due are based not upon the original assessment, but on the revised assessment.

In the instant case there is no showing that the assessments had been reduced as was done in the Schuman case, *supra*, pursuant to Act 282. The assessment in the Schuman case had been reduced so that the purchaser from the state was not required to pay the accumulated taxes amounting to $204.18, but paid only $33.22. Schuman, the purchaser from the state, sought to charge the original owner with the total amount of the taxes which would have been due on the original assessment, but he did not pay the state that amount for the land. He paid only $33.22, and it was held that in equity he was entitled to recover only what he had paid, with interest.

Schuman asked for no equitable relief, and it was held that he was entitled to recover only what he had paid with interest. Here appellees, who did not acquire title under the provisions of Act 282, but under other legislation, probably Act 331 of 1939, are asking for equitable relief, and the opinion here questioned holds that they may have that relief but upon the condition that they do equity, that is that they pay the amount of the general taxes, which would have been paid had appellees and their predecessors in title discharged their legal duty of paying the taxes assessed against the land as they matured and became payable.

Appellees have tendered and insist that they should only be required to pay the taxes for which the land sold, and those paid by appellants, since appellants purchased from the state. If this is all appellees may be required to pay, the state will have lost its taxes for a period of about fifteen years, after refunding to appellant the purchase price paid for the state's title, which has failed.

It does not appear equitable that where appellees and their predecessors in title for many years failed to perform their legal duty of paying the taxes as they matured, that they should now be entitled to recover the

land freed from the state's lien without paying the taxes which were at all times due, but never paid by anyone.