### TATUM *v.* ARKANSAS LUMBER COMPANY.

Opinion delivered February 26, 1912.

1. EQUITY—LACHES.—Laches is not mere delay, but delay working to another's disadvantage, which may come from the loss of evidence, change of title, intervention of equities and other causes. (Page 254.)

2. QUIETING TITLE—LACHES.—In order to bar a suit to remove a cloud upon the title to wild and unimproved land by laches, a purchaser under a void tax title and his privies must have, prior to the commencement of the suit, paid the taxes upon the land under color of title for at least seven years. (Page 255.)

Appeal from Bradley Chancery Court; *Zachariah T. Wood,* Chancellor; reversed.

*J. R. Wilson* and *Williamson & Williamson,* for appellant.

1. The statute of limitations does not apply. The longest period of taxpaying by appellee or its grantors on any of the lands involved, intervening between the commencement

of such payments and the institution of this suit, is five years and nine months, and the shortest period two years and nine months.

2. The testimony entirely fails to show an abandonment of the lands by appellant's ancestor. Tiedeman on Real Prop. § 739; 24 L. R. A. (N. S.) 1161; 66 Ark. 26; 1 Cyc. 1139. Appellee lumber company can acquire no advantage by reason of any statement made by T. J. Tatum, since a stranger can neither take advantage of an estoppel nor be bound by it. Tiedeman on Real Prop. § 731; 16 Cyc. 779. Abandonment will not amount to laches short of seven years unless there are supervening equities in favor of the holder of a tax title.

3. There is no such showing of laches as will defeat the claim of appellants. 75 Ark. 382, 387; 152 U. S. 416; 45 Ark. 81; 83 Ark. 154, 161; 90 Ark. 430; 94 Ark. 226; 138 S. W. 1011-1012; 140 S. W. 278; 62 Ark. 319.

*Fred L. Purcell,* for appellee.

While it is true that at common law abandonment of lands was not recognized, as contended by appellants, yet it is recognized now that lands may be lost by abandonment, *i. e.,* by relinquishment of possession with intention not to return and occupy it. 70 Ark. 538. The intention to abandon may be shown by declaration or by conduct of the party who is charged with the abandonment. 135 Am. St. Rep. 888; 93 Ark. 298; 135 S. W. 908; 145 U. S., 368. Especially will an owner be held to have abandoned the land and to be barred on account of his laches where, knowing that it had been forfeited to the State for nonpayment of taxes, he takes no steps to redeem, makes statements to the effect that he had let it go because it was worthless, and asserts no rights until after the purchaser has been put to expense in good faith to enhance the value of the land, and where its value has largely increased. 92 Ark. 500, 501; 81 Ark. 303; 138 S. W. 1011-1012.

*Gaughan & Sifford, amici curiae.*

Abandonment of right to the land by a plaintiff or his ancestors and laches on the part of either or both are good defenses in an action of this kind. By abandonment is meant a positive intent of renunciation of one's rights to the land,

and not a mere leaving or quitting of the *corpus* of the property. Only by recognizing this difference and this distinction and the sufficiency of either as a defense can the decisions of this court in tax forfeiture cases be reconciled. The contention of appellant that, as to wild and unoccupied lands, the defense of abandonment of the right to the lands by the original owner can not be maintained, can only be sustained by overruling the cases of *Turner* v. *Burke,* 81 Ark. 352, and *Pirtle* v. *Southern Lumber Co.,* 98 Ark. 266. See also 138 S. W. 880.

HART, J. On December 31, 1910, this action was instituted in the chancery court by J. L. Tatum *et al.,* as the sole heirs at law of Thomas J. Tatum, deceased, against the defendant, Arkansas Lumber Company, to cancel certain tax deeds to the defendant as a cloud upon the plaintiffs' title and to quiet the plaintiffs' title thereto. The lands are situated in Bradley County, Arkansas, and comprise about six hundred acres.

On May 15, 1857, they were conveyed by the State of Arkansas to Thomas J. Tatum as swamp and overflowed lands; they were forfeited to the State for the nonpayment of taxes for the years 1869-70-71. Thereafter Thomas J. Tatum never paid any taxes on the lands. They were wild and unimproved, and the timber on them was chiefly hardwood. On January 11, 1900, Thomas J. Tatum died in Bradley County, Arkansas, where he had lived since he purchased the land from the State. He was never married, and left surviving him as his sole heirs at law the plaintiffs in this action, who are his nephews and nieces and the children of his deceased nephews and nieces.

On September 3, 1906, the State conveyed certain of these lands to J. H. Adams, and on November 1, 1906, Adams conveyed them to the defendant.

On December 8, 1904, the State by its donation deed conveyed to H. A. Davis some of the lands, and on the 8th of May, 1905, Davis conveyed said lands to the defendant.

On July 31, 1906, the State conveyed to Grand Davis by donation deed certain of the lands, and on the 11th of August, 1906, Grand Davis conveyed said lands to the defendant. On April 30, 1904, the State conveyed to S. A. Parker, cer-

tain of the lands, and on August 1, 1904, Parker conveyed them to the defendant. On December 12, 1905, the State conveyed to the defendant certain other tracts of these lands.

Before the institution of this suit, some of the plaintiffs conveyed their interest in these lands to the defendant and its grantors.

The chancellor found that the forfeiture of the lands to the State for the nonpayment of taxes was void. The chancellor also found that the plaintiffs were the sole heirs at law of the said Thomas J. Tatum, and that they had the legal title to said lands. The chancellor, however, found that the plaintiffs were barred by laches from asserting their title to the lands, and dismissed the complaint for want of equity. To reverse that decree, this appeal has been prosecuted by the plaintiffs.

The record shows that the State of Arkansas conveyed these lands to Thomas J. Tatum in 1857 as swamp and overflowed lands, and that he did not convey them to any one up to the time of his death in 1900. The testimony abundantly establishes the fact that the plaintiffs are the sole heirs at law of the said Thomas J. Tatum, deceased, and we do not deem it necessary to set it out at length. The chancellor found that the forfeiture to the State for the nonpayment of taxes was void, and it is not claimed upon this appeal that the chancellor erred in so finding. Therefore. it is not necessary to discuss further that feature of the case.

The principal issue raised by the appellee is whether or not the chancellor erred in holding that the plaintiffs were barred by laches from asserting title to the lands involved in this suit.

Mr. Pomeroy says that the true doctrine concerning laches has never been more concisely and accurately stated than as follows: "Laches, in legal significance, is not mere delay, but delay that works disadvantage to another. So long as parties are in the same condition, it matters little whether he presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has in good faith become so changed that he can not be restored to his former state. if the right be then enforced, delay becomes

inequitable, and operates as estoppel against the assertion of the right.   The disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side, and injury therefrom on the other, it is a ground for denial of relief."   5 Pomeroy, Eq. Jur. (3 ed.), § 21.

The doctrine of laches was defined in substantially the same language in the case of *Earle Improvement Co.* v. *Chatfield*, 81 Ark. 296, and has been adhered to ever since.   The record in this case shows that the defendant and its grantors have paid the taxes on the land from a period of time ranging from two to five years.   In the case of *Herget* v. *McLeod,* 102 Ark. 160, this court, following the rule laid down in *Chancellor* v. *Banks*, 92 Ark. 407, after discussing the rule laid down in that case and the prior decisions of the court, said:   "It will thus appear that, before the plea of laches can be available to deprive the true owner of his land, it must be shown that the party claiming the same and his grantors have, prior to the commencement of the suit, paid the taxes on the land under color of title for at least seven years, the statutory period of limitation.   The fact that the true owner has failed to pay taxes on the land for a period longer than seven years will not alone bar him; but it must appear that during such period the defendant and those under whom he claims have themselves paid the taxes thereon for at least seven years prior to the institution of the suit before the true owner can be declared barred by laches."

As above stated, the record shows that this was not done.

In the case of *Earle Improvement Company* v. *Chatfield, supra,* the court held that the chancellor should not divest the title of the owner simply because during his failure to pay taxes there has been a great  enhancement in the value of the land.   The court said there must be some supervening equities calling for the application of the doctrine of laches.   In the case at bar the defendant introduced evidence tending to show that its agent who purchased the land for it had been told by different persons before and since he bought the lands that Thomas J. Tatum had abandoned his claim of title thereto.   It does not claim, however, that Thomas J. Tatum or the plaintiffs in this suit made any representations to it

or to its agents that they had abandoned or waived their claim of title to the lands in controversy. We do not deem it necessary to decide whether such representations made to third parties before the institution of this suit would constitute intervention of equities so as to bar plaintiffs under the doctrine of laches, for the reason that the preponderance of the testimony shows that no such representations were made to the defendant or its agent prior to purchase of the land. It is true that Adams, the agent of the defendant who purchased the lands for it, testified broadly that such representations were made to him, both before and after he purchased the land, but on cross examination he was asked who made the representations to him and named the parties whom he said made them. These parties were examined as witnesses in the case, and all of them with but one exception stated that the representations that Tatum did not claim the land were made by them to Adams after the date of the purchase. The plaintiffs introduced other witnesses who testified that up to the date of his death T. J. Tatum was asserting title to the lands, and it is not claimed that any of the plaintiffs by any declarations ever waived their right to the land.

So it may be taken as established by a preponderance of the evidence that no such representations were made to the defendant or to its agents prior to its purchase of the lands in controversy.

It is also claimed by the defendant that the increase in the value of the land and the building of certain railroads and tramroads by the defendant constituted such intervening equities as to preclude the plaintiffs from maintaining this action. The testimony in the case shows that the defendant and another lumber company own most of the timber lands in Bradley County, and that for the past ten years it has been building tramroads in the direction of this land for the purpose of hauling the timber, when felled, to its mill. It does not appear, however, from the testimony that these improvements would not have been made had the plaintiff sooner asserted their rights to the land. As above stated, the defendant had other large bodies of timber lands and had erected its mill and commenced the building of tramroads into its timber land before it purchased the lands in contro-

versy, and it does not even appear from the testimony that the purchase of these lands was a material inducement to it to make these improvements. The tramroads have not been extended to the land in question, but are now distant from them from two and a half to five miles, and the plaintiffs have done nothing which justifies acquiescence in the adverse claim of the defendants. Nor, as we have already seen, does the testimony show that the delay of the plaintiffs, or of Thomas J. Tatum, from whom they inherited, has been of such a character as to induce the defendants or its grantors to alter their circumstances or conduct, so that the element of estoppel is introduced. It can not be asserted that the plaintiffs stood by when it was their duty to speak and permitted the defendant to improve and develop the property until it had become very valuable or greatly increased in value, and on that account should be precluded from asserting their right to it.

It is also contended by counsel for defendant that the case of *Pirtle* v. *Southern Lumber Co.*, 98 Ark. 266, is authority for the decision of the chancellor that the plaintiffs are barred by laches. We do not think that that case has any application to the case at bar. There the defendant pleaded laches, and we held that the plaintiff and his grantors were estopped by conduct from claiming title to the lands. Cone was the original owner of the lands, and gave two depositions in the case; one of these depositions was not in the record, and the court held that it must indulge every presumption from his testimony that was favorable to the decision of the chancellor. Cone might have testified that he had represented to the defendant and its grantors that he claimed no title to the land, and that he waived or abandoned any right he then had to it, and that, upon the faith of these representations, the defendant had expended its money for the land in question. Cone having told the defendant that he had waived or abandoned whatever rights he might have in the land and the defendant having purchased upon the faith of this representation, it would be inequitable to permit him subsequently to assert his right or title to the land, and under the rule of estoppel by conduct he would be precluded from doing so. Of course, if he was estopped, his grantee would also be estopped.

Finally, it is contended in regard to H. A. Davis's donation that plaintiffs are barred by the statute of limitation of two years (Kirby's Digest, § 5061). The chancellor found that said donated land was in the actual possession of H. A. Davis and his grantors for more than two years before the suit was instituted, and that plaintiffs were barred from recovery by the statute of limitations. We do not think his finding in this regard is sustained by the evidence. We have examined the testimony carefully on this point, and, without setting it out, think that it establishes the fact that Davis and his grantee did not hold possession for two years, and that the plaintiffs are not barred by the statute of limitations.

It follows that the chancellor erred in holding that the plaintiffs were barred by laches from asserting their title to the land, and for this error the decree will be reversed, and the cause remanded with directions for the chancellor to enter a decree in accordance with the prayer of the complaint.

ON REHEARING.

Opinion delivered April 15, 1912.

HART, J. Our attention is called to the fact that some of the plaintiffs conveyed their interest to certain of the lands in controversy to the grantors of the defendant prior to the institution of this suit.

We have examined the testimony in regard to this question, and find that these conveyances were not procured by fraud, and are therefore valid conveyances. This fact was conceded by counsel for the plaintiffs in their original briefs, and we did not intend in our opinion to reverse the decision of the chancellor on this point. We find, however, on the examination of our opinion, that, under the direction given, it might be susceptible to that interpretation. Hence our former opinion as to that extent is modified, and we think that the opinion of the chancellor, in so far as it holds that these conveyances were valid and binding upon the plaintiffs executing them, is correct.

We are also asked to reconsider our decision to the effect that the plaintiffs were not barred on account of laches.

In the case of *Hughes* v. *Wallace,* 118 S. W. (Ky. App.) 118, the doctrine of laches is tersely stated as follows:

"Laches is negligence by which another has been led into changing his condition with respect to the property or right in question, so that it would be inequitable to allow the negligent party to be preferred upon his legal rights to the one whom his negligence had misled. It falls but little short of estoppel, and is applied upon the same principle." This is the principle upon which we proceeded in our original decision, and the application of it to the facts before us convinces us that our former opinion on this point was correct.

Counsel for the defendant urge that the agent who purchased the land for the defendant was told by two or three persons before the purchase that Tatum had abandoned any claim of title to the land. The evidence does not go to the extent of showing that this information was imparted to the agent for the purpose of inducing defendant to act upon it, or that Tatum had any knowledge that any such statements were made. The evidence shows that the defendant had knowledge that the legal title to the land was in Tatum when it purchased it, and the defendant must be presumed to have known that the tax titles to the land were void. Tatum lived in the same neighborhood in which the lands were situated. Witnesses for the plaintiffs say that he claimed title to the land up to the date of his death, and continuously endeavored to prevent persons from trespassing upon it. So far as the record discloses, the evidence shows that Tatum was wholly in ignorance of the fact that the defendant purchased the lands upon the faith of any representations made by him that he claimed title to it, and it does not appear that such representations, if made by him, were made to any one who contemplated purchasing the land. Under these circumstances, the defendant can not claim that it was misled or injured by the conduct of Tatum in this regard.

The lands in controversy were covered with hardwood timber, and the evidence does not show that the defendant had improved or developed the land. The defendant and another lumber company own most of the pine, as well as the hardwood lands in that county. The defendant, prior to the time it bought the lands in question, had erected a

mill and extended a tramroad in the direction of other lands owned by it for the purpose of getting out the timber and manufacturing it into lumber. It is true that, after it purchased the land, it extended this tramroad in their direction, but it owned a large body of other timber lands in the same neighborhood, and it does not appear from the testimony that the purchase of these lands was a matter of inducement for the extension of its tramroad. In other words, so far as the record discloses, the tramroad would have been extended whether the lands in controversy had been purchased by it or not. A preponderance of the testimony shows that a rise in the value of the timber was common to all the lands in that section, and, so far as the defendant is concerned, was a purely accidental one. In other words, the rise in the value of the timber on the lands was not due to any act whatever in regard to the land done by the defendant; it was not connected with any fault of the plaintiffs or merit on the part of the defendant. Under these circumstances, the doctrine of laches can not be invoked by the defendant. It was not in any sense prejudiced by the delay of the plaintiffs in bringing the suit, and, besides this, the intention of Tatum not to abandon his claim of title to the land is proved by a preponderance of the testimony.

We have again, at the instance of counsel for the defendant, examined the evidence in regard to the Davis donation, and adhere to our original opinion on this point. It is purely a question of the preponderance of the evidence, and no useful purpose could be served by setting out the evidence in detail or by an extended discussion of it.

The petition for rehearing will be denied.