HUGHES MANUFACTURING & LUMBER CO. v. CULVER.

Opinion delivered November 6, 1916.

1.  CORPORATIONS—FRAUDULENT ACTS OF DIRECTORS—SUIT TO UNCOVER FRAUD—BY WHOM MAINTAINABLE.—Where the managing directors of a corporation are guilty of fraud in its management, the conduct of a suit to uncover their fraud will not be left under their control.

2.  CORPORATIONS—FRAUDULENT ACTS OF DIRECTORS—ACTION BY MAJORITY STOCKHOLDERS.—One A. owned 990 shares of the capital stock of a corporation which had only 1000 shares of capital stock; the directors of the corporation disposed of its assets, consisting solely of a certain tract of land, without accounting to either the corporation or to A. therefor. *Held,* A. might maintain an action in her own name to have the conveyance set aside, where she joined as defendants, the corporation, the directors and the purchaser of the tract of land.

3.  CORPORATIONS—ACTS OF OFFICERS—PRESUMPTION OF VALIDITY—BONA FIDE PURCHASER.—Where land belonging to a corporation was fraudulently conveyed to a purchaser, the principle that the acts of the officers of the corporation will be conclusively presumed to be valid, will apply only in cases where the purchaser is bona fide and for value, without notice of the defective act of the corporation.

4.  CORPORATIONS—EXECUTION OF DEED—AUTHORITY OF OFFICERS. The officers of a corporation have authority to execute a deed to its land only when authorized to do so by proper resolution of the board of directors.

5.  CORPORATIONS—SURRENDER OF CHARTER—RIGHT OF MAJORITY STOCKHOLDER.—The resolution of the board of directors authorizing

the president and secretary of a corporation to wind up its affairs and surrender its charter, will be invalid where the action was taken without the knowledge or consent of a stockholder who held 990 shares of its 1000 shares of capital stock.

6. FRAUDULENT CONVEYANCES—ACTION TO SET ASIDE—LACHES.—An action by the majority stockholder of a corporation to set aside a fraudulent conveyance of its lands, will not be barred by laches, where there was no intervention of equities in favor of the defendant, and the delay worked no injury to him.

7. APPEAL AND ERROR—ABSENCE OF INTEREST IN ISSUE IN APPELLANTS. Where, in an action to set aside a conveyance, as fraudulent, the chancellor decreed a cancellation of the deed, the appellant cannot complain of the action of the chancellor in allowing appellee's counsel a lien on the land for his fees.

Appeal from Greene Chancery Court; *C. D. Frierson*, Chancellor; affirmed.

STATEMENT BY THE COURT.

On February 10, 1914, Mary C. Culver instituted this action in the chancery court against the Hughes Manufacturing & Lumber Company, a corporation, the Culver Company, a corporation, H. A. Culver, D. R. Roberts and C. L. Flack, to cancel on the ground of fraud a deed executed by the Culver Company to the Hughes Manufacturing & Lumber Company. The material facts are as follows:

The Hughes Manufacturing & Lumber Company is a California corporation and the Culver Company is an Arkansas corporation. Mary C. Culver has owned nine hundred and ninety (990) out of the thousand shares of the capital stock of the Culver Company since its organization, but has never held any official position in it. The shares were of the par value of $100.00 each. H. A. Culver was president, D. R. Roberts was Secretary, and these two with Louella Culver, the wife of H. A. Culver, constituted the directors of the corporation.

In 1907, Mary C. Culver went to California and has been a resident of that State since that time. During the whole year of 1911, Louella Culver was not in the State of Arkansas. In 1911, the Culver Company

had seven hundred and sixty (760) acres of land in Greene County, Arkansas. On the 24th day of April, 1911, the Culver Company, by warranty deed, conveyed the seven hundred and sixty acres of land to the Hughes Manufacturing & Lumber Company for a consideration of $11,400.00 as recited in the deed. H. A. Culver as president and D. R. Roberts as secretary acted for the Culver Company in the execution of the deed. The deed contained the following recital, "That the Culver Company, a corporation organized under and by virtue of the laws of the State of Arkansas, by its president and secretary, duly authorized by proper resolutions of its board of directors," etc. At the time of the execution of the deed Grant Hughes, C. L. Flack and Thos. Hughes were stock holders and officers of the Hughes Manufacturing Company. On December 18, 1912, the last mentioned Company executed a deed to the land to C. L. Flack. On July 22, 1913, it executed another deed to Flack to correct a defective acknowledgment in the first deed. On the 28th day of February, 1914, after the institution of this suit, and after notice of *lis pendens* had been filed, Flack conveyed a one-half interest in the land to Thos. Hughes.

Under the charter of the Culver Company, the general nature of the business proposed to be transacted was to buy and sell real estate and to buy and sell all wood products, timber and minerals. The by-laws among other things provided that the president, when duly authorized by the board of directors, shall sign all contracts, orders, deeds, liens, licenses and other instruments of a special nature. The by-laws also provide that the Secretary shall sign with the president all contracts, deeds, liens, licenses and other instruments when so ordered.

Mary C. Culver testified substantially as follows: I have owned nine hundred and ninety (990) shares of the stock of the Culver Company since its organization. I am seventy-two years old and moved to California in 1907. I left the business affairs in the hands of my son, H. A. Culver, and the other officers of the

corporation. The corporation owned seven hundred and sixty (760) acres of real estate in Green County, Arkansas, and that was all its assets. I never author-ized the sale of the lands involved in this suit, and never knew that they had been sold until after the death of my husband, E. W. Culver, which occurred in April, 1912. I obtained my information about the transac-tion by insisting upon knowing from my son, H. A. Culver, about the business affairs of the corporation. I never at any time authorized the deed to be made nor did I ratify the same in any way after it was made. Neither the Culver Company nor myself ever received any consideration whatever for the execution of the deed. Neither H. A. Culver nor D. R. Roberts had any power of attorney or any other authority from me or from the Culver Company to make such a deed and the records do not show (and as far as my knowledge goes) there was no resolution of the board of directors or of the stockholders authorizing such a deed. Proper resolutions were always passed by the board of direc-tors before deeds conveying the lands of the Company were ever executed. In addition thereto, my written consent was always obtained when such sales were made.

H. A. Culver testified substantially as follows: I am forty-seven years of age and now reside in Seattle, Washington. I was president of the Culver Company from its organization and D. R. Roberts was its secre-tary. My father and I entered into a contract with the Hughes Manufacturing & Lumber Company of which C. L. Flack was Vice President and director for the purchase of the lands of the Culver Company and the consideration therefor was the purchase of the Redwood Lumber Company stock and plant by us. D. R. Rob-erts as secretary and myself as president executed the deed to the lands to the Hughes Manufacturing & Lum-ber Company. No resolution was passed by the board of directors authorizing us to make the deed. My wife, Louella Culver, was the remaining director of the Culver Company and she was not in Arkansas during

the year 1911 at all. My mother, Mary C. Culver, never had any knowledge of the conveyance of these lands. Neither she nor the Culver Company ever received any part of the consideration. The sole consideration was the sale of the stock and plant of the Redwood Lumber Company to my father and myself. After the sale I moved to California and my father and I took charge of the stock and plant of the Redwood Lumber Company there. I thought when I made the trade that I could make enough money to pay back my mother or the Culver Manufacturing & Lumber Company and this is the reason I did not tell her anything about the transaction. I was deceived in the transaction. The amount of the indebtedness of the Redwood Lumber Company was misrepresented to us and the condition of the plant was not nearly so good as was represented. The company was practically insolvent. Neither Mary C. Culver nor the Culver Company were known in the contract but the same was the individual transaction of my father and myself. Mary C. Culver never knew that the deed had been executed until I gave her the facts in Seattle in July, 1913. Thos. Hughes was president, C. L. Flack, Vice President, and Grant Hughes manager of the Hughes Company when the deed was executed. At the time I was in Portland, Arkansas, and my father was in Los Angeles, California. D. R. Roberts was in Walnut Ridge, Arkansas.

Grant Hughes testified substantially as follows: E. W. and H. A. Culver had a thorough knowledge of both the physical and financial condition of the Redwood Lumber Company at the time the deed in question was executed. I told them all that I knew of the condition of the Company. I think Mary C. Culver was present with her husband at one time when the subject of this deal came up and was discussed but I do not remember what was said. On cross-examination the witness stated that Mary C. Culver had nothing to do with the closing up of this deal in his presence. He further states that he thinks E. W. Culver exhibited

a copy of the resolution authorizing the transfer of the Greene county land.

E. E. Norton testified substantially as follows: On and after November 21, 1911, I had conversations with Mary. C. Culver relating to the procuring of a loan of $1,500.00 for the benefit of the Redwood Lumber Company which she secured on her own personal financial statements. She said nothing about any transfer of land by the Culver Company to the Hughes Company and did not mention any deal between the Hughes Company and E. W. Culver and H. A. Culver. She produced a telegram purporting to come from E. W. Culver or J. E. Culver, requesting that she get a loan of $1,500.00 for the Redwood Manufacturing Company.

In rebuttal, Mary C. Culver denied that she had ever accompanied her husband to the office of Grant Hughes or had any conversation with him whatever at any time in which the purchase of the Redwood Lumber Company was discussed. She said that she borrowed $1,500.00 on her own credit for the Redwood Lumber Company because she had received a telegram from her son Joe saying that he needed that amount of money at once. That if the money was placed to the credit of the Redwood Lumber Company it was at her son's, J. E. Culver's, request.

Other facts will be referred to in the opinion. The court found that the deed of the Culver Lumber Company of the date of April 24, 1911, was executed without any authority from the Culver Company and was a fraud upon it and a decree was entered cancelling the deed. The court also cancelled the deed from the Hughes Manufacturing & Lumber Company to Flack and from Flack to Hughes.

It appears that Mary C. Culver and the other stockholders of the Culver Company executed a deed to C. L. Flack, to a part of these lands, dated November 5, 1914. The court also cancelled the deed from Mary C. Culver and the other stockholders to Flack.

The attorneys for the plaintiff filed a petition to enforce an attorney's lien on these lands. Upon the final hearing upon this branch of the case the decision of the chancellor was against Flack and the decree also provided that the attorneys were entitled to enforce their lien against the lands for their fees.

*Partlow & Shane* and *Block & Kirsch,* for appellants.

1. The suit should have been brought in the name of the corporation. 104 U. S. 450; 96 Ark. 282.

2. The deed was signed by the proper officers, the seal attached and recited that it was authorized by resolution of the board of directors. The presumption is that it was executed according to law and the burden is on those who dispute the existence of the authority. 23 Am. Dec. 728 and note; 2 Thompson on Corp., § 1928; 12 Cent. Dig., §§ 1728-9; 5 Dec. Dig., § 432. The authority may be shown otherwise than by the official records. 62 Ark. 7; 79 *Id.* 745; 89 *Id.* 435; 104 U. S. 192; 2 Col. 226.

3. The deed was ratified by acquiescence and affirmative action. 2 Morawetz on Pr. Corp. (2d Ed.), § 623; 89 Ark. 435; 103 *Id.* 283; 104 W. S. 192; 13 C. C. A. 420; 7 *Id.* 253.

4. It was error to sustain the demurrer as to the attorney's lien.

*Geo. G. Dent* and *R. E. L. Johnson,* for appellee.

1. The act of making the deed was primarily beyond the corporate power—*ultra vires.* 131 Mass. 258; L. R. 7, H. L. 653; 8 S. W. 396; 26 U. S. (Law Ed.) 950; 71 Fed. 787; 10 C. C. A. 415.

2. The president and secretary were not authorized to execute the deed as required by the by-laws. 103 Ark. 283; 62 *Id.* 7; 2 Morawetz on Pr. Corp., § 628; 71 Fed. 799; 152 U. S. 346; 62 Ark. 33; 7 Wall. 636; 84 Ark. 444.

3. The deal was that of H. A. and E. W. Culver and no consideration passed to the corporation.

The suit was properly brought as a stockholders' bill.  3 Pom. Eq., § 1095 note; 2 Cook Stockholders, § 741; 18 How. 341; 104 U. S. 450; 27 N. E. 487; 10 Cyc. 978; 15 S. W. 448.

4.  No acquiescence or ratification is shown. There were no laches.  2 Cook on Corp., § 731; 4 Thompson on Corp., § 4572; 121 Ala. 131; 81 Ark. 296; 76 Id. 53; 91 U. S. 587.

5.  The deed to Flack was void for fraud, and failure to perform conditions.

6.  The lien was fixed by contract.  179 S. W. 577; 21 Atl. 712.

HART, J. (after stating the facts).

(1-2)  It is first insisted that the suit should. have been brought in the name of the Culver Company and not in the name of Mary C. Culver.  It will be remembered that Mary C. Culver owned practically all the stock in the corporation and that the fraudulent conduct complained of was that of the managing officers of the corporation.  The directors were the guilty parties in the sale of which complaint is made.  The directors who were charged with wrongdoing and the corporation itself were made parties defendant and under the circumstances we think the plaintiff was entitled to maintain the action in her own name. Where the managing directors of the corporation are the guilty parties, it cannot be said that the management of a suit to uncover their fraud should be left under their control.  Red Bud Realty Co. v. South, 96 Ark. 281; Pomeroy's Equity Jurisprudence, 3rd ed., Vol. 3, § 1095; 10 Cyc. 978-980.

(3)  It is contended by counsel for the defendants that there is a conclusive presumption that the officers who executed the deed were authorized to do so.  The by-laws authorized the president and the secretary of the Culver Company to execute deeds when authorized to do so by the board of directors.  In the case of Sibly v. England, 90 Ark. 420, the court held that because a certified copy of the record of a deed is admis-

sible as evidence, under the statutes of this State, to prove the execution of the deed and that the seal was attached, the presumption arises that the officer who executed the deed was authorized to do so. There is a class of cases which hold that where the act in question is that of one representing the corporation as a general agent whose authority depends on compliance by himself with the preliminary regulations, the presumption of regularity against the corporation is conclusive. The rule is said to be founded on the very limited opportunities of the public to know with certainty the circumstances of the internal management of the corporation. The rule, however, is only applied in those cases where one in good faith has advanced value on the faith of the presumption. *Louisville Trust Co.* v. *Louisville, N. A. & C. Ry. Co.*, 22 C. C. A. 378, and cases cited. The principle of the right of the public to conclusively presume that the corporate acts are valid as above stated and to proceed on that presumption apply only in cases of a *bona fide* purchaser for value, without notice of the defective act of the corporation. Hence, it is not necessary for us to decide this question; for the Hughes Company was not a *bona fide* purchaser for value.

(4) In the instant case the record shows that neither the Culver Company nor Mary C. Culver, who owned nearly all its stock, ever received any part of the consideration for the deed or reaped any benefit from it. The whole consideration of the deed went to E. W. Culver and H. A. Culver and the officers of the Hughes Company knew this fact. They had notice of the illegal appropriation of the consideration for the deed and knew that the consideration passed to the benefit of H. A. Culver and E. W. Culver. Therefore this does not belong to that class of cases where one in good faith has advanced value on the faith of the presumption of the regularity of the acts of the officers of the corporation and the corporation is not permitted to prove to the contrary. Under the rule above announced in *Sibly* v. *England* it was incumbent upon

Mary C. Culver to satisfy the court that the president and secretary acted beyond their authority. On this point it is quite clear that the president and secretary were not authorized by the board of directors to execute in the name and in behalf of the corporation the deed in question. The records of the corporation were produced and did not show that the board of directors ever authorized the execution of the deed. The president and secretary had no authority to execute the deed by virtue of their offices. They could only do so under the direction or approbation of the board of directors.

H. A. Culver testified in positive terms that no such resolution was passed by the board of directors and Mary C. Culver testified that she did not know that the deed had been executed and gave no such authority. The records of the corporation do not show that any such resolution was passed by the board of directors.

It is next contended that a corporation may approve the unauthorized acts of its agents and make them their own and that this may be done directly or indirectly. We do not think, however, the facts and circumstances disclosed by the record show any ratification on the part of the corporation or by Mary C. Culver.

(5) Counsel for the defendants insists there was a ratification because the records of the corporation show that at a call meeting on December 16, 1912, the board of directors passed a resolution reciting that there being no further assets of the corporation, nor indebtedness, the president and secretary are authorized to wind up all the affairs of the corporation and to surrender to the State of Arkansas its charter. Mrs. Culver did not know that this action had been had by the board of directors and there is nothing to show that she in any way was participating in the meeting. Section 957 of Kirby's Digest provides that a corporation may surrender its charter by resolution adopted by the majority in value of the holders of the stock. Hence

we are of the opinion that there was no ratification of the execution of the deed in question.

(6)   It is also insisted that Mary C. Culver is barred of relief by laches.  Her testimony shows (and no attempt is made to contradict it) that as soon as she discovered the fraud, she submitted the facts to an attorney in Arkansas and filed the present suit as soon as he had completed his investigation and advised her to do so.   Under these circumstances she was not guilty of laches.   Besides, there were no intervention of equities in favor of the defendants, and the delay, if any, did not work any injury to the defendants. Hence, she was not barred by laches.   *Tatum* v. *Arkansas Lumber Co.*, 103 Ark. 251.

In November, 1914, Mary C. Culver and the remaining stockholders and officers of the Culver Company executed a quitclaim deed to C. L. Flack to a one-half interest to all the lands involved in this suit.   C. L. Flack was permitted to intervene and set up his rights under the deed.   A demurrer to his intervention was sustained by the court, and in this, it is insisted that the court erred.   We need give this point but little consideration.   The record shows that a reply was filed to this intervention.

Mary C. Culver testified that the deed in question was executed and only to be delivered to Flack under certain conditions which were never performed by him, and for that reason the deed was not delivered. She is the only witness who testifies on this point. Neither Thos. Hughes nor Flack, President and Vice President of the Hughes corporation, have seen fit to testify in the case.   The testimony of Mary C. Culver on this point was sufficient to entitle her to a decision on the merits of the case and it becomes immaterial that the chancellor sustained a demurrer to the intervention of Flack.

(7)   Finally it is insisted that the court erred in permitting the attorneys of Mary C. Culver to file an attorney's lien.   This is a matter that could only concern Mary C. Culver.   Having decided that the

defendants have no interest in the lands, they have no cause of complaint and are not entitled to have that question heard on appeal.

The decree will be affirmed.