STATEMENT BY THE COURT.
Appellant corporation brought this suit to quiet its title to 80 acres of land, describing it, in section 9, township 17 north, range 15 west, Marion County, Arkansas. Trial was had, and decree was entered quieting the title in the plaintiff to all the land except "that part embraced in the deed from the Morning Star Mining Company to E. F. LeMarshall," particularly describing it.
The court quieted the title to this piece of land in Douglas N. Everett, Barbara Everett, Miriam Everett and Elizabeth Everett, as the sole beneficiaries in the last will and testament of Isaac S. Craig, unless the Morning Star Mining Company paid to the said minors the sum of $450, with interest from January 1, 1921, at 6 per cent. per annum, within 60 days from the date of the decree. From which decree the Morning Star Mining Company prosecutes this appeal.
The complaint alleged that appellant company was a corporation, and the owner of the land described, having *Page 51 
acquired title thereto by a patent from the United States, dated November, 1893. That, at all times thereafter, except at the time mentioned relative to the occupancy of the defendant, Mulholland, it had been in the actual, open, adverse and exclusive possession of the land, and had paid the taxes thereon every year since the issuance of the patent. That there was on the records of Marion County a deed purporting to convey to the defendant, E. F. LeMarshall, a certain portion of said land (described as set out in the decree awarding it to the Everett minors). That the deed purports to be that of the Morning Star Mining Company, executed on the 19th day of October, 1894, by John Reed, president, and George W. Chase. The acknowledgment was by Chase alone on the 19th day of October, 1894. The deed was filed for record on the 10th day of January, 1895. Alleged that the signature of Reed to the deed was a forgery; that the board of directors had never authorized Reed or Chase to execute same. That another deed was executed by Celina A. LeMarshall and E. F. LeMarshall, purporting to convey, for $500, the said described land to one Ephriam Craft of Boston, of date of December 4, 1895, filed for record March 24, 1896, and recorded on April 21, 1896. Also alleged the land described in the LeMarshall deed to Craft was not the same as that described in the Morning Star Mining Company to LeMarshall, and that LeMarshall had no title to the land at the time of the execution of the deed to Craft, nor thereafter, and that both deeds constituted a cloud upon plaintiff's title, and asked that they be canceled. Alleged, further, that the Morning Star Mining Company became a purchaser of the lands from the Morning Star Company at a foreclosure sale thereof, made in 1912. That C. A. Mulholland went into possession of a portion thereof without right, and erected a store and other buildings thereon. Prayed for an order dispossessing him. Alleged the death of Ephriam Craft in the year 1901, and lack of information as to his heirs. *Page 52 
Complaint was filed on the 14th day of April, 1922, warning order issued, and appointment of attorney ad litem for the minors made.
Mulholland answered in October, 1922, admitting the issuance of the patent in the year 1893, and denying that the deed to LeMarshall was a forgery, or void for any reason, and that the appellant had been in the exclusive possession of the land since the issuance of the patent. He further alleged that, during the year 1892, E. F. LeMarshall was the owner of the lands described in the deeds set out in the complaint as the Placer mining claim, and that the Morning Star Mining Company was the owner of certain other lands described in the complaint. That both the Morning Star Mining Company and the said LeMarshall were desirous of perfecting the title to said lands by acquiring a patent thereto from the United States Government, and that they entered into an agreement, in which the Morning Star Mining Company was represented by G. W. Chase, its secretary and general manager, by the terms of which the Morning Star Mining Company was to make a placer mining claim embracing the lands owned and claimed by LeMarshall, and to make application for patent from the United States for all of said lands, and to use the improvements that had been made on that portion of said lands owned by the said E. F. LeMarshall in making its final proof upon said claim, with the expressed understanding that the said LeMarshall would pay his proportionate part of the expenses in securing said patent and that, upon the issuance thereof, the said Morning Star Mining Company would convey to the said LeMarshall that part of the lands owned by him prior to the issuance of such patent, all of which agreement was performed. That the Morning Star Mining Company executed the first deed to LeMarshall set out in the complaint, in compliance therewith. That thereafter the LeMarshalls conveyed to Craft by the second deed described in the complaint; that Craft died, leaving his sister, Susan *Page 53 
E. Craig, as his only heir; that Susan E. Craig died, leaving by will all of her property to Isaac S. Craig. That defendant, Mulholland, entered into a contract to purchase from Isaac S. Craig the land herein involved; that this defendant is now in actual possession of said land under said contract, and is entitled to a deed therefor from said Craig upon the payment of the purchase money. Alleged he had been in exclusive and adverse possession of the land for more than seven years; pleaded the statute of limitations as a defense, and also that the Morning Star Mining Company was guilty of laches, and estopped from prosecuting its claim.
The LeMarshalls and Isaac S. Craig adopted the answer of Mulholland, admitting only the issuance of the patent from the Government, as alleged in the complaint, and denying that the deeds set own in the complaint were void.
The death of Isaac S. Craig was suggested, and the case revived in the name of his unknown heirs, for whom an attorney ad litem was appointed, and a warning order issued.
The guardian of the Everett minors filed a separate answer, alleging that Isaac S. Craig died in 1923, leaving all his property by will to the said minors, for whom he was the legal guardian, and denied all of the allegations in the complaint.
The said guardian filed a supplemental answer and cross-complaint in 1924, pleading laches as defense to the suit; that defendant Mulholland had, since the institution of the suit, sold his improvements on the land involved to the plaintiff, the Morning Star Mining Company, which had taken possession thereof, and refused to carry out the contract of sale entered into by Craft and Mulholland, as set out in Mulholland's answer, and that there was still due upon said contract the sum of $450, for which amount he prayed judgment, as guardian, on behalf of his wards, against the company, or full possession of the lands involved in the suit. *Page 54 
Reply was filed, denying the allegations of the cross-complaint.
The facts are, substantially, that the improvements made and occupied by Mulholland were located on the 80 acres of land patented by the Government to the Morning Star Mining Company, which had paid the taxes thereon, no part of same being assessed to any one else, from the year 1892.
In May, 1920, the president of the company was informed that Mulholland was making improvements on part of the land, and gave instructions that he be notified to desist, that the lands belonged to the Morning Star Mining Company. He talked with Mulholland the last part of May, 1920, advising him that the land was owned by the company and that he was trespassing, and must stop further improvements or get off the land. Witness further stated that the company constructed and owned two frame buildings on this particular piece of land. He also introduced in evidence three plats certified by the General Land Office of the United States, under date of September 9, 1922, showing three mining claims as follows:
"Morning Star No. 2 Lode — canceled.
"Smelter Lode — canceled.
"Morning Star Lode — canceled
"Not reliable in bearing and area."
Said one plat indicated a claim as "Orphan Boy"; also one of the plats, undated, contained no reference to five other mining claims, mentioning them, which, he said, never had any existence in fact, because they did not appear in the records of the General Land Office. That he immediately made a search of the records of Marion County, and discovered for the first time the deed set out in the complaint for cancellation, and that neither had appeared on any abstracts of title previously prepared for the company; and also that he was not able to find any mining claims on record at the Harrison Land Office, as above mentioned, and that it was impossible *Page 55 
to locate the point of beginning of the land described in the LeMarshall deed.
The surveyor of the county made a survey in 1920 and found a store, mill, shop and barn occupied by Mulholland on the land; that he had previously made a survey of the two acres claimed by Mulholland, and that the buildings were located on these two acres, which are part of the land in controversy. There are two dwellings located on the land described.
Reed, the president of the company, denied that he had executed the deed to LeMarshall for the company; claimed not to have had any knowledge of it, and that the records of the corporation do not show any authority for the making of the deed, and that no consideration had been received for it. He also claimed that the company had been in continuous, exclusive and adverse possession of the 80 acres of land from the receipt of the patent in 1892, paying taxes thereon. That the dwellings belonged to the company; were erected by the company in 1899 or prior thereto. Said abstracts to the deeds made reference to certain mining claims, naming them, thirteen in number.
The secretary of the company testified that he had no knowledge of the execution or existence of the purported deeds from the company to LeMarshall and from him to Craft. That he was a stockholder, director and vice president of the company at the time these deeds were supposed to have been executed; that George W. Chase had no authority to execute them; that no authority was ever delegated to John Reed or Chase to execute any deeds for the company, as shown by the minute-book of the meetings of the board of directors.
LeMarshall testified that the deed was executed and delivered to him by the Morning Star Mining Company by John Reed, its president, and George W. Chase, its secretary, conveying the land at the time known as the "Fair Play Mining Claim," or a portion of it, located in the northeast quarter of the northeast quarter, section 9, township 17 north, range 15 west; that George W. Chase, *Page 56 
secretary of the company, proposed to him that he buy the south half of the "Fair Play Mining Claim," owned by Cox and McCray, which he declined to do on account of the small area of five acres; that Chase then offered to deed him the whole of the "Fair Play Mining Claim," as he intended to get a patent for 80 acres in that section. including the "Fair Play Mining Claim;" saying then the title would be in the company; that the present claimant was impecunious and would not put up any part of the expenses for obtaining a patent; that he wanted witness to buy the claim and allow him to use the improvements for proving up and obtaining a patent which witness did. He wanted witness to buy the claim and allow him to use the improvements on the south half of the Fair Play Mining Claim for proving up and obtaining the patent, agreeing, when the patent was secured, that at the Morning Star Mining Company would give him a deed thereto.
Witness purchased this claim and allowed Chase to so use it in procuring the patent, which was obtained about a year later. He then demanded his deed, and Chase replied that he had not figured the costs of the patent. He finally demanded the deed, offering to pay his part of the expense, and was later told the deed was ready for delivery, only lacking the signature of John Reed, president of the company, telling him also his share of the expenses of obtaining the patent was $37.50. Later, in the fall of 1894, as witness was passing his place, Chase called him and told him the deed was ready for delivery, and witness handed him the $37.50 and took the deed. Witness examined the deed, and complained that it only contained about five acres, when he had been promised ten. Some time afterward witness complained to John Reed, president of the Morning Star Mining Company, about it, and was told that Mr. Chase attended to all the company's business in Arkansas, and it would have to be settled with him. Witness had previously paid Cox and McCray $350 for their interest in the Fair Play mining claim. He subsequently, at the request of Chase, sold his interest to Ephriam Craft, a *Page 57 
cousin of Chase. So far as his knowledge and belief extended the deed from the Morning Star Mining Company was not a forgery, and was executed in good faith. That he went into possession under it and continued in the open, notorious and peaceful possession until he sold to Craft, no one else ever claiming ownership. He had no information that the deed was claimed to be a forgery until he received a letter dated May 1, 1922, about the warning order in this case; that he sold the land more than 27 years ago, when his interest therein ended, and he did not know who had paid the taxes on it since.
Plats relative to the mining claims were introduced in evidence.
Decree was entered on December 21, 1925, from which this appeal is prosecuted.
(after stating the facts). The undisputed testimony shows, as claimed by appellant, that the Morning Star Mining Company obtained a patent to the lands from the United States in the year 1893 and that it has paid the taxes thereon since that time. It is also true that the president of the mining company stated that his signature to the deed, purporting to convey the tract of land to LeMarshall, had been forged, and he and other witnesses testified that the minutes and records of the corporation showed no authority given for the execution of the deed to this tract of land to LeMarshall and receipt of no consideration therefor.
LeMarshall testified, however, that Chase, the secretary and general manager of the corporation, induced him to purchase the Fair Play mining claim from Cox and McCray, for which he paid $350, and allow him to use the improvements on the south half thereof in proving up and procuring a patent for the corporation to the whole 80 acres, at the time agreeing that the mining company would, upon procuring the patent, execute a deed to him for the land embraced in the said milling claim, which he purchased at his instance, and stated that this deed, now claimed to be a forgery, was executed *Page 58 
by the company and delivered to him by Chase in carrying out said agreement. This testimony is also undisputed.
The deed itself was recorded shortly after its execution, and the description therein was such that the county surveyor could locate the tract upon which Mulholland, who had succeeded to the title conveyed therein, made his improvements, and up on which the court held the Everett heirs had a lien for the balance of the purchase money due from Mulholland, and quieted the title in appellant company for the whole tract only upon payment of said purchase money within 60 days, and otherwise decreed to the said heirs the ownership thereof.
Appellant seeks equitable relief herein, for the cancellation of a deed alleged to have been forged, which was recorded more than 27 years ago, and was met by a plea of laches, limitations, and adverse possession, supported by the testimony.
Mulholland's answer, pleading laches and adverse possession, was adopted by all the other defendants, and the fact that the appellant company bought his claim or interest during the pendency of the suit was but a recognition of his right under the contract of purchase, and did not operate to enable them to hold the land against the minors for balance of purchase money, in disregard of Mulholland's contract for the purchase thereof. Gibson v. Herriott, 55 Ark. 85, 17 S.W. 589; Tatum v. Arkansas Lbr. Co., 103 Ark. 251, 146 S.W. 135.
There is no sufficient excuse for such long delay in proceeding for the cancellation of this deed, under the circumstances that appellant company claimed to be unaware of its existence, notwithstanding it had been of record more than 27 years, purported to have been executed for the corporation by its president, and was signed and acknowledged by the secretary and general manager, long since dead, as well as most of the other principal actors in the transactions, or who had knowledge thereof. Dickson v. Sentell, 83 Ark. 385,104 S.W. 148; Davis v. Harrell, 101 Ark. 230, 142 S.W. 156. *Page 59 
If LeMarshall's testimony is true — he is also corroborated by other circumstances in the record — and his statement is undisputed, appellant was estopped to deny the validity of its deed shown to have been delivered by its secretary and general manager in the performance of the company's agreement with him for the conveyance of this particular tract of land, for the assistance rendered by him in purchasing the claim and allowing the improvements thereon to be used by the company in procuring the patent for the entire tract.
We find no prejudicial error in the record, and the decree is affirmed.