## FERGUSON et al. v. MARBLE SAV. BANK OF RUTLAND, VT.
### No. 11408.

Circuit Court of Appeals, Eighth Circuit.
June 26, 1939.

John C. Sheffield, of Helena, Ark., for appellants.

Robert A. Zebold, of Pine Bluff, Ark., and J. G. Burke, John I. Moore, Jr., and G. D. Walker, all of Helena, Ark., for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and BELL, District Judge.

WOODROUGH, Circuit Judge.

The decree appealed from in this case quieted the title of the Marble Savings Bank to certain lands in Phillips County, Arkansas, enjoined the defendants from asserting any interest therein and awarded the writ of assistance against them. They appeal.

The decree was rendered upon a supplemental bill filed in the mortgage foreclosure suit in which the Marble Savings Bank had obtained a decree of foreclosure of its paramount mortgage upon the property and an order of sale pursuant to the decree. A foreclosure sale of the property had been made to the savings bank and the sale had been confirmed by the court, and master's deed issued in proper form was delivered to the savings bank. Afterwards the savings bank undertook to dispossess the appellants who were on the lands by action in ejectment. It was then disclosed that the master's deed held by the savings bank had not been approved and confirmed by the court as required by Arkansas Statute, Pope's Digest, § 1821.[1] It appeared that the deed was in all respects in due form as contemplated by the order confirming sale and directing its issuance, but the master appointed by the court was then a young attorney without experience in such procedure, and it resulted from his mistake that the deed was delivered to the savings bank and recorded without the required approval thereof by the court. The savings bank accordingly filed its supplemental bill in the foreclosure case, naming all the appellants herein as parties defendant. The supplemental bill was in the tra-ditional form to obtain relief in equity alleged to be necessary to execute and carry into effect the decree and orders theretofore lawfully made and entered by the same court in the foreclosure suit.

The parties named as defendants in the supplemental bill answered that they were in possession of the lands or portions thereof under title derived through one David Ferguson, either by descent as his heirs at law or through mesne conveyance from such heirs. David Ferguson had owned the land for many years, and in the year 1920 while he was the owner, he obtained the loan and executed and delivered as security therefor the mortgage on the lands which was foreclosed by the original decree herein. He was a party defendant in the foreclosure case and bound by the decree. That decree was entered on April 8, 1929, and the deed pursuant to the sale had thereunder was of date June 22, 1929. It was alleged by the defendants to the supplemental bill that said David Ferguson had at all times denied any title of the savings bank in or to the lands; that his possession as at all times actual, open, notorious, peaceable and adverse to the plaintiff savings bank and was so continuously maintained by said David Ferguson prior to his death for more than seven years from the date of the foreclosure sale, seven years being the statute of limitation period for suits to recover lands in Arkansas. Pope's Digest, § 8918.

On the trial of the issue so presented the trial court found, among other things, that David Ferguson had continued to live on all or part of the lands described in his mortgage and conveyed by the master's deed until his death in September, 1936, except when he was living or visiting with his grand-daughter on another farm, but that such continued residence was with the plaintiff's consent and acquiescence. The court further found that no notice of any adverse claim of title or ownership on the part of David Ferguson was ever given or brought home to the plaintiff Marble Savings Bank during the lifetime of said David Ferguson.

The exact age of David Ferguson is not shown in the record, but at all times relevant here he was an elderly negro, beyond laboring age.

---

[1] "A conveyance by a commissioner shall not pass any right until it has been examined and approved by the court, which approval shall be indorsed on the conveyance and recorded with it."

It appears that the mortgaged lands in question have always been subject to overflow which has rendered profitable operation almost impossible. Floods washed away the better improvements and makeshifts and shacks have been put up for shelter by colored persons on the ground. But there was no evidence that the savings bank ever abandoned the lands which it had foreclosed upon. Mr. Robert Zebold, an attorney of Pine Bluff, Arkansas, represented the Marble Savings Bank in its foreclosure suit and acted as its agent at all times thereafter in the management and control of the land. He made frequent visits to it and though he attempted to confine the tenancy to David Ferguson and his son, Simon Ferguson, he had direct dealings with other colored men who tilled patches of the ground with the permission of the Fergusons. The principal sum of the savings bank's decree was $16,350.56, and Mr. Zebold paid out more than $2,500 on the bank's account for taxes on the lands during the years following the sale, though some items of tax accrued which were left unpaid. He testified that he had direct contacts and dealings with all of the appellants throughout the period and detailed the advancements and collections in connection with the cropping operations in the respective years. All of the appellants knew him and fully recognized his control of the property for the owner. He considered David Ferguson an interesting old colored man and had many conversations with him, and David Ferguson never at any time made any claim or assertion of any right or title to the property adverse to the Marble Savings Bank. He at all times recognized Mr. Zebold's complete control for the owner.

The only testimony adduced to support the claim that David Ferguson had asserted an adverse claim was that of Simon Ferguson and his colored neighbor to the effect that they were present at some time before Christmas in 1930 during a conversation between Mr. Zebold and David Ferguson. They say that Mr. Zebold was then endeavoring to obtain a quit claim deed from David and that David declined because he claimed he was not indebted to the Marble Savings Bank but owed his debt to another company. Mr. Zebold denied that any such conversation took place and pointed out that he could have had no object in getting a quit claim from David because David had given a second mortgage on the property and that mortgage constituted a lien prior to any claim of David's. The trial court heard and observed the witnesses and the whole testimony fully sustains the finding that David simply was permitted to stay on the land with the bank's consent and that he never brought home to the bank any claim to the lands on his part adverse to the bank's title. The law of Arkansas is clear that he did not start the statute of limitations running in his favor against the bank. Britt v. Berry, 133 Ark. 589, 202 S.W. 830; Fulcher v. Dierks Lumber Co., 164 Ark. 261, 276, 261 S.W. 645.

The appellant Jesse White obtained a deed to a piece of the land in 1935. It was executed by children of David Ferguson during David's lifetime. It conveyed no title and the supplemental bill was filed against Jesse White within two years after his deed was obtained. The evidence sustains the finding of the trial court, "After purchasing the land (Jesse White) subrented from Simon Ferguson and he paid certain taxes but he had notice of the claim of title by the plaintiff before sub-renting and paying the taxes or making improvements."

It is contended for the appellants that the savings bank was guilty of laches which would bar relief on the supplemental bill, but we see no merit in the contention. The decree of foreclosure and the judicial sale had proved effective to give the savings bank complete control and disposition of the lands and Mr. Zebold testified that it never had any notice of its title being questioned prior to November, 1936. At that time Mr. Zebold received a letter from an attorney who had previously written asking Mr. Zebold to fix a price at which Simon Ferguson could buy the lands. It was intimated in the letter of November, 1936, that there was a "probable right of possession of some of the tenants" and it was stated that "the lands are terribly involved on account of numerous transfers appearing of record" and that the writer did "not see how they (the lands) are worth anything to the bank", and the writer made a tentative offer to buy the lands himself for "say 2.00 an acre". Shortly thereafter, in February 1937, the supplemental bill was filed. There were no laches. See Johnson v. Umsted, 8 Cir., 64 F.2d 316; Tatum v. Arkansas Lumber Co., 103 Ark. 251, 146 S.

W. 135; Galliher v. Cadwell, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738.

It was claimed that some of the appellants had made improvements upon the lands and had paid some items of taxes thereon for which they should be compensated, but no substantial evidence was adduced in support. It was pleaded that the value of the use and occupation enjoyed by said appellants far exceeded any possible expenditure made by them. The bank asked no judgment on that account, but the court rightly found that any improvements made or taxes paid were with full knowledge of the plaintiff's ownership and allowance for such claims was properly denied. Wallace v. Snow, Ark., 124 S.W.2d 209; Foltz v. Alford, 102 Ark. 191, 143 S. W. 905, Ann.Cas.1914A, 236.

The supplemental bill presented a just and proper case for the exercise of the equity jurisdiction. At the time the court entered its decree of foreclosure it reserved jurisdiction in its decree "for further proceedings upon the coming in of the master's report". See Purcell v. Gann, 113 Ark. 332, 168 S.W. 1102, loc. cit. 1105. But with or without such express reservation the power inhered in the court to render the foreclosure decree, to which it found the plaintiff in its action was entitled, fully effective, and to vest in the purchaser of the lands the full title which the purchaser at the judicial sale paid for in reliance on the court's decree. The procedure was in accord with traditional federal equity practice. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. ——; Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123. Although no exact precedent has been found in the state decisions, there is no ground to believe that the equity jurisdiction is there administered upon any different principle. Kellogg v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 111, 83 L.Ed. 73.

The bank's right to have the master's deed issued to it pursuant to the court's order approved and confirmed is clearly established in Arkansas. St. Louis & Ark. Lumber & M. Co. v. Godwin, 85 Ark. 372, 375, 108 S.W. 516; Purcell v. Gann, 113 Ark. 332, 341, 168 S.W. 1102.

Finding no error in the decree, it is affirmed.